**CITY OF KLAWOCK, Appellant,**

v.

**George E. M. GUSTAFSON, Trustee for the Townsite of Klawock, et al., Appellees.**

**No. 77–3328.**

United States Court of Appeals, Ninth Circuit.

Nov. 3, 1978.

Rehearing Denied Jan. 3, 1979.

---

Robert G. Mullendore (argued), Roberts, Shefelman, Lawrence, Gay & Moch, Seattle, Wash., for appellant.

Frances M. Green, Atty. (argued), Dept. of Justice, Washington, D.C., for appellees.

Before WRIGHT, GOODWIN and AN-DERSON, Circuit Judges.

GOODWIN, Circuit Judge:

Following litigation by the City of Klawock to acquire title to certain vacant lots, the City applied for attorney fees. The district court denied the application, and the City appeals.

Klawock is an incorporated city on Prince of Wales Island in southeastern Alaska. Land for Alaska city development was reserved for territorial townsites in 1927, in accordance with the Native Townsite Act of the previous year, 43 U.S.C. § 735, and the general Alaska townsite legislation, 48 U.S.C. § 355. Klawock's townsite was surveyed and partially subdivided by 1940, and the statutory townsite trustee received a patent in 1941. The trustee in due course conveyed title to persons who had occupied subdivided lots.

Subdivision of the townsite was completed on July 30, 1974, and the trustee decided to issue deeds to the occupants of the newly-subdivided lots. The city objected because the occupants of fourteen of the lots were not natives, and because the trustee, following a 1959 Interior Department Deputy Solicitor's opinion concerning another townsite (Saxman) declined to deed the city the 333 unoccupied lots. Elsewhere in the United States, municipalities were entitled to all unoccupied lots covered by the townsite statutes or to their economic benefit, but the Deputy Solicitor had taken the position that special rules applied to native townsites in Alaska.

The City of Klawock sued the trustee (Gustafson), the Secretary of the Interior, and the non-native claimants, seeking to quiet title to all of the newly-subdivided lots which did not have native occupants. The parties allowed the litigation to rest pending exhaustion of administrative review.

After the Interior Department's Board of Land Appeals had upheld the trustee's proposed action concerning the lots occupied by non-native persons, the district court in November, 1976 upheld the BLA's determination. The BLA had not ruled on the unoccupied lots, but the district court stated that, contrary to the Deputy Solicitor's opinion, the trustee had the authority to deed the 333 lots to the city. The court then entered judgment against the city on the fourteen lots.

Klawock started an appeal from the district court's judgment denying the city the fourteen lots. After negotiations, and after a new Regional Solicitor's opinion allowing the trustee to deed the vacant lots to the city directly, rather than putting them up for auction, the parties stipulated to the dismissal of the appeal. The trustee has since deeded the 333 lots to Klawock, and the briefs advise that he is similarly deeding vacant lots to the cities in other subdivided native townsites.

After the resolution of the main case, Klawock's attorneys petitioned the district court for an award of attorney fees, arguing that the court's decision had been in the city's favor so far as the vacant lots were concerned, and that the vacant lots constituted a common fund from which the fees could be paid. The district court, emphasizing its decision against the city on the fourteen occupied lots, and ignoring the 333 vacant lots, held that Klawock was not the prevailing party. The court said that the conveyances to the city of the 333 empty lots and to other cities in Alaska of similar lots was the result of the Regional Solicitor's changed opinion, and that the trustee was without authority to pay the fees. The court also stated the view that the other native towns were indispensable parties.

█ It is clear from the record, however, that the Department's change of policy was not spontaneous. It was the direct result of litigation commenced and prosecuted by the attorneys in this case. The settlement of the litigation resulted in the loss of fourteen lots and a gain of 333 lots.

The source of the present problem was that the fourteen lots with non-native occupants received most of the parties' attention during the proceedings. Whether to evict non-native occupants in order to preserve fourteen lots for possible native use in the future was a more dramatic issue than was the disposal of 333 vacant lots. However, the city unequivocally sought in its complaint all the unoccupied land in the townsite. Moreover, in its oral opinion the district court clearly indicated that it would hold for Klawock on the vacant lots.

The Deputy Solicitor in his 1959 opinion had ruled that the trustee must retain title to all lots until they were actually occupied. Under that ruling, the city could gain neither vacant lots nor their economic benefits. The district court, on the other hand, stated that the Native Townsite Act did not preclude the trustee from disposing of unoccupied lots in native townsites as he would in other townsites. Under the regulations, the district court said, "the City is eligible to receive deeds to the unoccupied and unsold lots within the Klawock townsite and to receive the economic benefits of the lots that are sold by competitive bidding."

The parties apparently accepted the district court's opinion as determining the city's right to receive the vacant lots. The trustee was uncertain, however, whether he had the authority to deed the lots to the city directly, or whether he should put them up for auction. The Regional Solicitor, in a February 1977 opinion, resolved this question, and soon afterwards the city took title to the vacant lots and withdrew its appeal. The city apparently decided not to appeal for the fourteen occupied lots after winning title to the 333 vacant lots. (The stipulation for dismissal of the appeal provided that the trustee would deed those lots to the city.)

The trustee does not dispute that he is currently giving deeds to vacant subdivided lots in native townsites throughout Alaska to each of the appropriate municipalities. This action by the trustee is clearly a result of a policy change made in response to the district court's oral decision in the Klawock case. Under the relevant cases, Klawock's attorneys have an equitable claim to a reasonable fee and the vacant lots constitute a common fund to which the city and its attorneys may look for their attorney fees.

■ The common fund doctrine may be the earliest exception to the "American" rule that losers in litigation are not liable for winners' attorney fees. *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881). The doctrine remains alive despite recent Supreme Court rejection of other nonstatutory grounds for awarding attorney fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257–58, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This Circuit has recently given it a thorough discussion and application. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977). Its rationale is that, since one party has created or preserved a fund for the benefit of others, the others should contribute to the active party's costs. The payment comes from the fund itself, as a prior charge before the beneficiaries receive it. The classic example is a class action, but it is not necessary for the beneficiaries to be parties to the proceeding at all. A fund may exist simply because a prior ruling will, by *stare decisis*, determine future cases. *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

The city's litigation led to a change of policy by the trustee which will benefit many native towns. The change of policy is not precisely the result of the *stare decisis* effect of the district court's judgment, since district court judgments do not necessarily have such an effect. *Kessler v. Associates Financial Services Co.*, 573 F.2d 577, 579 (9th Cir. 1977). If this circuit had affirmed the judgment on appeal, *Sprague v. Ticonic*

*National Bank* would apply directly. But the city should not be forced to pursue an appeal after a case is settled solely to justify the payment of its attorneys. The city prevailed below in the main issue, and the equities are thus resolved.

■ The Second Circuit holds that "federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached, e. g., after a settlement." *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975). We adopt a similar rule; the alternative is unnecessary litigation. The city's attorneys produced a benefit for their client and for other native towns.

The use of *stare decisis* or administrative policy changes to justify a common fund recovery could, of course, have potentially undesirable impact. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 Harv.L.Rev. 1597, 1610–11 (1974). Here, however, the effect is carefully limited. The city and its attorneys seek to recover fees only from those lots actually in the trustee's hands at the time of the court's decision. This situation is comparable to that in *Sprague v. Ticonic National Bank*, where the bank's bankruptcy trustee had possession of property of trusts in addition to the one involved in the specific litigation. Specific property was in the hands of the same defendant who had lost the case and that defendant's duty under the previous decision was clear. With the situation here so precisely on point, *Sprague* controls.

■ The problems that remain are whether the lots which the trustee has already conveyed are available to pay the attorney fees, and how to convert the land into cash. The general rule is that the claim for legal services is a first charge on the common fund. Dawson, *Lawyers and Involuntary Clients*, 87 Harv.L.Rev. at 1606–07. On remand, the district court will consider whether the charge follows the property after its distribution. The parties did not raise this issue in this appeal.

An award of attorney fees is largely in the district court's discretion. *Preston v. United States*, 284 F.2d 514, 516 (9th Cir. 1960). The district court on remand will be exercising its discretion, and determining the amount of the fund available to pay the fees will be a necessary preliminary exercise. The court will also have to decide whether the methods which the city proposes for turning part of the fund into cash are appropriate and practical.

The other native towns are not indispensable parties to this proceeding. In arguing that they are, the trustee misconceives the nature of the city's claim. The claim is not against the other native towns but on the common fund in the trustee's hands. "[T]he third parties are not personally liable for the litigation costs. Any claim must be satisfied out of the fund." *Vincent v. Hughes Air West, Inc.*, 557 F.2d at 770. The trustee is an indispensable party, because he controls the fund, but the trust beneficiaries are not, at least prior to the trustee's distribution of the lots. Since the nonparty native towns will not be liable for fees, the court can resolve the issues without their presence. The cases the trustee cites are distinguishable on the facts and do not involve common fund situations.

The order denying the application for attorney fees is vacated and the cause is remanded to the district court for proceedings to determine the amount and value of the work done and to establish a proper formula for the payment by the trustee of an appropriate attorney fee from the proceeds of the vacant lands being conveyed to the cities.

On remand the district court is free to consider any matters properly presented by counsel and not foreclosed by the terms of the settlement or the finality of the judgment in this case.

In the event of further appeals in this litigation, jurisdiction will be retained by this panel.

Vacated and remanded.