**Donald KNIGHT and Foster Pepper & Shefelman, a law partnership, Plaintiffs/Cross–Appellants,**

v.

**The UNITED STATES of America, Defendant/Appellant.**

**Nos. 91–1454, 91–1488 and 92–1112.**

United States Court of Appeals, Federal Circuit.

Jan. 6, 1993.

Bennett McConaughy, Foster, Pepper & Shefelman, Bellevue, WA, argued, for plaintiffs/cross-appellants.

Jeffrey A. Clair, Attorney, Civ. Div., Dept. of Justice, DC, argued, for defendant-appellant. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., Wevley William Shea, U.S. Atty. and William Kanter, Attorney. Also Mark K. Doyle, Civil Div., Dept. of Justice, DC, for defendant-appellant. Of counsel was Michael Jay Singer.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

NIES, Chief Judge.

The United States appeals from a judgment of the United States District Court for the District of Alaska (entered June 10, 1991), in Civil Action No. A90–093, awarding Foster Pepper & Shefelman (Foster Pepper) $4,054.42, pursuant to an Alaska attorney's lien statute, for administrative advocacy on behalf of four employees (of which Knight is one) of the Department of the Interior.[1] Knight and Foster Pepper (collectively, "plaintiffs") cross-appeal seeking to obtain awards under the Back Pay Act, the Equal Access to Justice Act, and a "common fund" theory. We conclude that the United States is not liable for payment of attorney fees on any of these bases and, accordingly, *reverse* the judgment in favor of Foster Pepper. In all other respects we affirm the district court.

## I.

The dispute that spawned this attorney's fee litigation concerned the Office of Personnel Management's (OPM) interpretation of a statute authorizing Cost of Living Allowances (COLA) for government employees stationed in Alaska and in areas outside the continental United States. The statute caps the COLA at 25 percent of "basic pay."[2]

Due to a 1986 reduction in force (RIF), Donald Knight and other employees of the Department of the Interior were removed from their positions but exercised their rights to occupy lower grade positions. Although occupying lower positions, the RIF'ed employees were entitled to retain the same grade and level of pay for a period of several years. Shortly after the RIF, Interior reduced the amount of COLA paid to Mr. Knight and other RIF'ed employees to 25 percent of the basic pay for the positions they actually occupied. This adjustment was made to conform to OPM's interpretation of the statute which defined

---

1. Of this amount, $3,920.34 was awarded for fees, and $134.08 for expenses.

2. 5 U.S.C. § 5941(a) (1988) provides in part that:
Appropriations or funds available to an Executive agency, except a Government controlled corporation, for pay of employees stationed outside the continental United States or in Alaska whose rates of basic pay are fixed by statute, are available for allowances to these employees.... *The allowance may not exceed 25 percent of the rate of basic pay.* (emphasis added).

"basic pay" as the pay for the actual positions each occupied rather than the retained pay which each received.

Mr. Knight promptly hired Foster Pepper, on a sliding contingency fee basis, to handle his claim against the United States challenging the legality of the reduction of his COLA and recoupment of any alleged overpayments as contrary to the statute. Three other Interior employees, similarly situated, also hired Foster Pepper for the same purpose under the same terms.

On February 13, 1987, Foster Pepper wrote Interior respecting its clients' claims to the higher allowances. From the outset, Interior, at the local and national level, agreed with its employees' position, refrained from recouping any amounts paid which were contrary to OPM policy, and requested OPM's reevaluation of their entitlement, forwarding to OPM the attorneys' letter. On December 15, 1987, OPM responded to Foster Pepper, advising them that Interior's current COLA computation (based upon graded, rather than retained pay) was "consistent with current OPM guidance," citing two decisions of the Comptroller General.[3] Nevertheless, OPM gave its assurance that it would reevaluate the question, and it followed up with a request for a legal opinion from the Justice Department's Office of Legal Counsel.

In 1989, the Office of Legal Counsel issued an opinion that the COLA should be computed based upon "retained pay." OPM changed its policy in response. On July 21, 1989, it issued appropriate general instructions to all Federal agencies directing them to award back pay and interest on any timely filed claims arising from the "old" COLA policy.

## II.

On September 19, 1989, before any disbursement of back pay by Interior, Foster Pepper submitted to Interior a written request for fees in the amount of 25 percent of any back pay disbursement made pursu-

ant to OPM's July 21, 1989 directive. Foster Pepper sought fees under 5 U.S.C. § 5596(b)(1)(A)(ii) (1988) (the Back Pay Act) for its clients. It also asserted a right to have the fees agreed to by its clients withheld from their back pay award and, in addition, it demanded fees from the back pay of *any* Interior employee benefitting from the policy change.

After Interior denied its fee demands, Foster Pepper filed suit in the Alaska District Court, on behalf of itself and Mr. Knight (the only named employee/client). The complaint included counts for attorney fees and expenses under the Back Pay Act, 5 U.S.C. § 5596(b), the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, and a "common fund" theory. Foster Pepper also asserted at some point in the proceedings that, under Alaska Statute § 34.35–430(a)(3) (1990), it had a lien for fees due from its clients. During the pendency of the suit, Interior paid its employees the amount due as back pay.[4]

In a judgment dated March 5, 1991 (on an oral ruling rendered December 30, 1990), the court dismissed with prejudice the Back Pay Act and EAJA claims. The EAJA was found inapplicable, because there was neither a "civil action," nor an "administrative adjudication," nor an "adversary adjudication" which is a necessary predicate to such award. The court also found Foster Pepper's work not of such nature to be covered by the attorney fees provisions of the Back Pay Act, but, if within the coverage of that Act, the court found no abuse of discretion in Interior's denial of fees. Plaintiffs' claim for assessment of fees against a "common fund", namely the claims of all Interior employees for back pay, was dismissed with prejudice, the court finding that because back pay claims were never before the court, no "common fund" existed or could be established against which attorney fees could be assessed.

However, the court granted plaintiffs' fees "pursuant to the state [of Alaska]

---

**3.** These decisions were B–172124, dated June 2, 1976; and B–206028, dated December 14, 1982.

**4.** Interior distributed the back pay award to its employees *after* the filing of the lawsuit, but *before* the court made its oral ruling.

attorney's lien statute, in accordance with those fee agreements of the individual employees, [clients of Foster Pepper] of which the Department of Interior had notice prior to disbursement of the checks." The court stated that the award was also supported by "advance notice to the government of an assignment of a part of the award due to Knight such that the government could not ignore the assignment." Subsequently, in a minute order, the district court designated its prior oral ruling of December 30, 1990 as its decision. Following this ruling, Foster Pepper sought additional fees under EAJA for the fee litigation before the district court, which the district court denied.

The government appeals the finding of liability under Alaska's attorney lien statute, as well as the alternative ruling that it was obligated to honor the fee agreement as a partial assignment of the pay of Foster Pepper's clients. Plaintiffs appeal the denial of their claims under the alternate theories advanced. However, with respect to EAJA, fees are sought only for litigation work before the district court.

For the reasons discussed *infra*, we conclude that no fees are awardable in this case under any of plaintiff's theories:

1) Application of Alaska's attorney's lien statute (Alaska Statutes 34.35.430(a)(3) (1990)) to the United States is barred in this case by sovereign immunity and the Supremacy Clause;

2) No partial assignment to Foster Pepper of its clients' claims against the government is cognizable;

3) No "common fund" existed in this litigation against which the court could assess attorney fees; and

4) The circumstances do not warrant an award to Knight under the Back Pay Act or EAJA.

---

**5.** In holding that Interior acted "at its peril" by distributing the back pay award, the district court followed the rule that an adverse party, having notice of an attorney's charging lien, may be held personally liable under the lien statute to the attorney for the amount of the lien where such party pays off the client's claim directly to that party without the attorney's con-

---

III.

*Foster Pepper's Claims*

A. Alaska Attorney Fee Lien

The district court awarded attorney fees based upon enforcement of Alaska's attorney's lien statute, which provides that:

An attorney has a lien for compensation, whether specially agreed upon or implied ... upon money in the possession of the adverse party in an action or proceeding in which the attorney is employed, from the giving of notice of the lien to that party.

Alaska Statutes § 34.35.430(a)(3) (1990). Per Foster Pepper, this Alaska statute imposed a lien (to the extent of the 25 percent of recovery specified in its fee agreements) against undisbursed back pay that had been held by the government; its September 19, 1989, letter to Interior was "notice" perfecting this lien; and Interior is liable for failure to honor the lien when it distributed back pay without making the required 25 percent fee deduction. The district court agreed and entered judgment on this claim in Foster Pepper's favor to the extent of the amount owed by its four clients.[5]

The government asserts sovereign immunity from this suit. It argues that a state lien statute has no effect against the United States absent the government's consent and the government has not waived sovereign immunity respecting the Alaska statute. Further, the state lien law, if applied, would impermissibly regulate the operations of the federal government and compel the disbursement of federal funds for purposes not authorized by federal law. And finally, per the government, the state statute does not apply against a mere debt or obligation. While there is merit in each of these positions, we rest our decision on the jurisdictional ground that the government has not waived its sovereign immunity so as to permit a state law lien to be

---

sent. *See* 7 Am.Jur.2d *Attorneys At Law* §§ 347–348 (1980), and *cases cited therein.* Thus, Foster Pepper's claim for enforcement of lien rights against the government would not have been mooted by the government's payment of the back pay awards if the government were subject to the attorney's charging lien.

**1578**

effective against the amounts of back pay due to its employees. Thus, there can be no government liability for failure to honor the purported lien rights.

■ Until the COLA back pay was actually distributed by Interior, it was government property. *Buchanan v. Alexander,* 45 U.S. (4 How.) 20, 11 L.Ed. 857 (1845). Absent consent, state process to reach government property, even where there is a monetary obligation owed by the government to another, is not cognizable. "[O]bvious reasons of public policy" foreclose the enforcement of state law claims against such property without the Government's consent. *United States v. Ansonia Brass & Co.,* 218 U.S. 452, 471, 31 S.Ct. 49, 54, 54 L.Ed. 1107 (1910) (materialman's lien against vessel unenforceable where title had passed to the United States); *United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) (no lien for wages against construction progress payments withheld by government; therefore, surety has no rights of subrogation against such payments by reason of payment of wages owed by contractors).

■ The Supreme Court, in *Buchanan v. Alexander, supra,* held wages in the hands of the government not subject to state law garnishment, reasoning that "if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended." 45 U.S. at 20. Similar concerns were expressed in the *McCarty* case which precluded state courts from dividing military retirement pay in divorce settlements under community property laws. *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728,

69 L.Ed.2d 589 (1981).[6] Under the Appropriations Clause of the Constitution, Art. I § 9, cl. 7, "[m]oney may be paid out only through an appropriation made by law." *Office of Personnel Management v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990). From this precedent, we conclude that, unless the United States has submitted itself to such state law, an attorney lien statute, like a state garnishment statute, has no force or effect against it and places no restraints on the government's payment of its obligations to another, including the payment of wages.[7]

Foster Pepper contends that a waiver of sovereign immunity for its fee lien is effected by the "underlying cause of action" against the government under the Back Pay Act with respect to which sovereign immunity has been waived. Thus, per Foster Pepper, its claim is distinguishable from the garnishments, materialman's liens, and other processes discussed in the Supreme Court case law in that it: 1) embroils the government in no dispute to which it is not already party; and 2) encumbers no government property or assets that are not otherwise entangled in the underlying litigation.

While there is some authority that arguably supports this contention,[8] the contention is irrelevant in this case. This is not a suit for back pay. Obviously, this is not a claim by the individual plaintiff Knight against the government to compel the government to withhold from his wages the attorney fees he owes to Foster Pepper. This is a claim solely by Foster Pepper against the government to enforce asserted

---

**6.** The effect of the *McCarty* holding was eliminated by the Uniformed Service Former Spouse Protection Act, 10 U.S.C. § 1408 (Supp. V 1987).

**7.** *See, e.g.,* 42 U.S.C. § 659 (1988) (honoring legal process brought for enforcement of child support or alimony obligations against federal salaries); 5 U.S.C. §§ 5517, 5520 (1988) (authorizing withholding of state and local taxes).

**8.** In *Malman v. United States,* 202 F.2d 483 (2d Cir.1953), the court found jurisdiction for a claim based upon a statutory attorney's fee lien, concluding that the lien was a partial assign-

ment, "by operation of law," of the underlying claim. As such, it was not barred by the applicable Anti–Assignment statute. (The predecessor to 31 U.S.C. § 3727 (1988), then codified at 31 U.S.C. § 203, which applied only to voluntary assignments). However, the attorneys in *Malman* took nothing, inasmuch as the government's superior set-off right exceeded their client's recovery on the underlying contract claim. *See also United States v. Transocean Air Lines, Inc.,* 356 F.2d 702 (5th Cir.1966) (attorney's fee lien enforced by district court rendering judgment on air carrier's contract claim against the government).

lien rights. As such, there must be a waiver of sovereign immunity specifically applicable to the Alaska fee lien statute permitting the action to be brought. In other words, Foster Pepper's independent claim in the suit must have its own consensual base. It is not sufficient that the government is before the court on a different claim to which it has consented.

In sum, this "naked" claim of Foster Pepper for fee collection, premised entirely upon the Alaska fee lien statute, is controlled by the principles of *Buchanan, Ansonia, Richmond,* and *McCarty*. Absent a specific waiver of sovereign immunity, we must assign this claim for enforcement of an attorney's lien against the government to the general category of lien actions barred by sovereign immunity and the Supremacy Clause.[9]

### B. Assignment

■ Foster Pepper contends in the alternative that its fee arrangement created a partial assignment of its clients' claims against Interior, which is enforceable against the government under 5 U.S.C. § 5525 (1988).[10] Specifically, Foster Pepper alleges that the following statement, made by an Interior attorney (Mr. Arthur E. Gary) in a letter dated March 8, 1990, constitutes a recognition of assignment:

> I understand that Mr. Gary communicated to you the Department's willingness to recognize your 25% contingency arrangement....

Per Foster Pepper, the government failed to honor this assignment when it distributed back pay to its clients without deducting its 25 percent contingency fee from the amount distributed to each employee.

This theory suffers a variety of fatal defects. OPM's implementing regulations permit pay deductions for very limited purposes—labor dues, charity, income tax, alimony and child support, and savings. 5 C.F.R. § 550.311(a) (1992). Authorization for assignment to benefit attorneys (or creditors in general) is conspicuously absent, such assignment implicating the full panoply of constitutional and policy considerations discussed in Part III(A), *supra*. Authority to permit other pay deductions is vested solely in the "head of an agency." 5 C.F.R. § 550.311(c) (1992). Even if such authority can be delegated, there is no indication that it has been delegated to Mr. Gary. Finally, Foster Pepper's only evidence of recognition, the above quotation, is conclusively refuted by a declaration of Mr. Gary, stating that the offer was made in settlement of *all* fee claims asserted by Foster Pepper, including those relating to non-clients. This offer was unambiguously rejected by Foster Pepper's filing of this lawsuit.

### C. Common Fund Attorney Fees Claim

Plaintiffs made a claim for attorneys fees under the "common fund" doctrine of liability recognized in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882). The common fund theory does not impose additional liability on the losing defendant. Rather, as explained in *City of Klawock v. Gustafson*, 585 F.2d 428, 431 (9th Cir.1978), the principal authority on which plaintiffs rely:

> [Where] one party has created or preserved a fund for the benefit of others, the others should contribute to the active

---

**9.** At oral argument, Foster Pepper attempted to shift its claim to one for a taking of its property, namely the lien. However, as indicated, absent the submission of the United States to the Alaska statute, no lien rights existed. In addition, it raised a new argument that it should have a lien against the attorney fees which should be awarded under the Back Pay Act. Not only was this argument not raised below but also no fees were awarded under the Back Pay Act by the district court and we uphold that ruling. *See infra* Section IV(A).

In view of our disposition, we need not address the argument of the government that the

Alaska statute does not apply against a mere debt or obligation owed by a defendant to the attorney's client. *See Phillips v. Jones*, 355 P.2d 166, 170–71 (Alaska 1960).

**10.** The statute provides that:

The head of each agency may establish procedures under which each employee of the agency is permitted to make allotments and assignments out of his pay for such purpose as the head of the agency considers appropriate.

5 U.S.C. § 5525 (1988).

party's costs. The payment comes from the fund itself, as a prior charge before the beneficiaries receive it. The classic example is a class action, but it is not necessary for the beneficiaries to be parties to the proceeding at all.

"Common fund" claims have been successfully asserted by a winning litigant in what is essentially a suit for contribution from third party beneficiaries for expenses actually incurred. "Model" cases would include litigation which enhances or preserves the assets of a trust, *Greenough, supra,* or shareholder derivative litigation which increases the assets of a corporation. *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In such cases, nonparty beneficiaries or shareholders directly benefit from the augmentation of trust or corporate assets. The cost of litigation may be conveniently and equitably spread to *all* of these parties, by assessing a charge for attorney fees directly against the recovered assets. *See Mills,* 396 U.S. at 396–97, 90 S.Ct. at 627–28; *Greenough,* 105 U.S. at 532; *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Here, however, we are not presented with a cost sharing type of common fund case. Knight does not seek contribution from fellow employees for the fees, in the amount of one fourth of his back pay, which he owes Foster Pepper.

A suit by an attorney for fees which thereby reduced nonparties' shares of the common fund has also been recognized. *See Central RR & Banking Co., v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). The rationale in the latter type of case rests on unjust enrichment—that the lawyers "are entitled to reasonable compensation for their professional services" from those "who accepted the fruits of [their] labors." *Pettus,* 113 U.S. at 127, 5 S.Ct. at 392; *see also Petition of Crum,* 196 S.C. 528, 533, 14 S.E.2d 21, 24 (1941) (dictum, "It is repugnant to fundamental principles of equity ... that they should reap where they have not sown.").

Thus, Foster Pepper presents a claim in its own right for additional fees to be paid from back pay of Interior employees it did not represent. This claim is for compensation beyond what was contracted for with its clients. Per Foster Pepper, its work conferred a benefit on all Interior employees to the extent of the amount of COLA back pay each received, with the appropriate measure of compensation for this benefit being the same as that specified in the fee agreements with its clients. Further, per Foster Pepper, the government was obligated to withhold one fourth of the amount due for COLA back pay and remit the sum directly to Foster Pepper because its claim created an equitable lien. Finally, it argues that the United States cannot escape from payment to Foster Pepper by reason of having injudiciously paid out the total amount of back pay to its employees.

As an initial matter, one argument can be disposed of summarily. Contrary to Foster Pepper's view, the government itself was in no position to recognize Foster Pepper's claim for fees from other Interior employees thereby reducing the amount of back pay to which each was entitled.[11] Absent a court order recognizing the validity of Foster Pepper's claim for fees against the back pay of non-client employees, the government was obligated to pay its employees the entirety of the amount it owed to each one. The government could not unilaterally surrender their rights to a portion of their back pay. Thus, Foster Pepper's argument that the government was obligated to pay Foster Pepper one quarter of the back pay of nonclients simply upon its demand is wholly unsupportable.

Recovery under the common fund doctrine stems from the equitable power of a court to create the obligation for attorney fees against benefits some received as a result of the advocacy of another. The obligation of the party holding the common fund to pay the attorneys flows from the *court order* not from the common fund *theory.* The common fund doctrine may provide the justification for a court order

---

**11.** And thereby no doubt spawning suits by these employees against the government.

but, in and of itself, the doctrine imposes no obligation or liability on the common fund or on the party holding that fund. Thus, Foster Pepper's argument that the common fund doctrine and its demand imposed an equitable lien against the COLA back pay due Interior employees is sheer sophistry. Only a court order, not Foster Pepper's demand, could impose such a duty and there has never been a court order in this case sanctioning Foster Pepper's claim for fees from a common fund.

The district court ruled that it was precluded from recognizing the existence of a common fund consisting of the COLA back pay due Interior employees because the issue of back pay awards was never before the court. We understand the court to be saying there was no "res" under the control of the court against which attorney fees could be assessed.

Foster Pepper asserts that this conclusion was error because there *was* specific property, earmarked for distribution to a finite, readily ascertainable "benefited class"—namely, the undisbursed back pay of Interior employees affected by the change of COLA policy and the court's jurisdiction over the government gave it power to charge that "fund" with its attorney fees without the non-client employees being brought into the case.

█ Contrary to Foster Pepper's view, a "common fund" is the creature of a *court's* inherent equitable power over funds under its control. A common fund does not crystallize at the moment a single plaintiff prevails on his claim. It is not created by the parties or their lawyers. A "common fund" is established by a court. *Sprague*, 307 U.S. at 166–67, 59 S.Ct. at 780; *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 257–8, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).

Foster Pepper's reliance on *City of Klawock v. Gustafson, supra*, to support its position is misplaced. In *Klawock*, as a result of litigation by the city against the government as trustee of Klawock lands, the government deeded over certain trust lands to Klawock, adopted the same policy respecting deeding over other parcels of land held in trust for others, and actually transferred some of the trust land to the beneficiaries. The attorneys (again Foster Pepper) sought fees in that litigation (whether additional fees or sharing the fees incurred by Klawock is not clear), to be paid *from the lands held* by the government for these other trust beneficiaries who benefitted from the changed policy. The court concluded that such an award was appropriate under the narrow circumstances of that case, none of which are present here.

First, in *Klawock*, the "res" was *trust property* of other beneficiaries at the time of the court order in the hands of government, and plaintiffs sought fees only against those lands that remained in government hands. Here, the government is not a trustee of a common fund represented by claims against the federal treasury. *National Council of Community Mental Health Ctrs. v. Matthews*, 546 F.2d 1003, 1008 (D.C.Cir.1976), *cert. denied sub nom. Wagshal v. Califano*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977) ("The United States is more than a mere stakeholder in this instance. It is the owner of the unexpended grant funds."). Moreover, all the purported "common fund" had been paid to the employees before any court order. Second, the court held that the beneficiaries of the trust were not indispensable parties to the litigation, but only with respect to trust property not transferred to them. In this respect, the application of the common fund doctrine fit into the case law respecting claims against trust property. *See, e.g., Greenough, supra.*

The government in this litigation, as indicated, never stood in the relationship of a trustee who could represent the interests of its employees. Foster Pepper agrees the fee claim is not against the government and does not increase its liability but rather applies against the purported "common fund" of amounts due employees. Even if it were held that there was a common fund and that the fund was distributed to Interior employees in error, the government

would be entitled to recoupment. Thus, the principle in *Klawock* respecting the beneficiaries not being indispensable parties because their trustee was before the court is inapplicable in this case. More appropriate authority is *Matthews, supra*, which held that it would violate due process to charge the attorney fees to members of a class whose interests respecting the fee were not adequately represented and who had not been informed that their benefits might be reduced by the attorney's claim for fees from their recovery. That appears to be the circumstance in this case. *Matthews*, 546 F.2d at 1008–09.

◼ Although the United States may, under certain circumstances, be obligated to honor a "common fund", such obligation can only arise from litigation before a court, adequate representation of all parties in interest, identification of a common fund as to which the government is merely a stakeholder, jurisdiction over the fund by the court directly or through a party representing those being assessed, and exercise of the *judicial* equity power to impose liability on the fund—none of which are here present.

Looked at realistically, Foster Pepper's claim against the government is *not* for "common fund" recovery, but for improper disbursement of back pay to employees without withholding attorney's fees. The viability of such a theory must be premised upon a breach of obligation to Foster Pepper to retain this portion of amounts due government employees, and the right to sue the government for such a breach. Foster Pepper has no contract with the government, no lien against the government, no claim against the government premised upon tort. No court has found the nonclient employees had an equitable obligation to pay Foster Pepper from their COLA back payments. Indeed, the employees have never had an opportunity to contest their purported obligation to pay Foster Pepper. Thus, the government can-

not have breached any duty to retain this amount for Foster Pepper.

All of these circumstances lead us to conclude that the district court was correct in holding that there was never a common fund under the control of the court against which the court could under common law principles impose a charge for attorney fees on nonparties and we affirm the denial of attorney fees on Foster Pepper's common fund claim.

## IV.

### *Knight's Claims*

Knight asserted claims premised upon the Back Pay Act and the Equal Access to Justice Act. These claims are for an affirmative award of attorney's fees, above and beyond any back pay recovered by Knight. Any claim under either statute belongs to Knight, not Foster Pepper. *FDL Technologies v. United States*, 967 F.2d 1578, 1580 (Fed.Cir.1992).[12] The Back Pay Act claim was for fees incurred by Knight in connection with Foster Pepper's advocacy before Interior, OPM, and the Office of Special Counsel. The EAJA claim is now limited to attorney fees for Foster Pepper's advocacy before the district court in this fee litigation.

### A. Back Pay Act

◼ Knight asserts error in the district court's denial of fees under the Back Pay Act for his attorney's administrative advocacy. This Act provides in pertinent part:

An employee of an agency who … is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period

---

**12.** The holding in *FDL* is premised upon the "prevailing party" language of the Equal Access to Justice Act. The Back Pay Act's award of fees to "an employee of an agency" would compel the same result.

for which the personnel action was in effect— ...

(ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with Chapter 71 of this title, or under Chapter 11 of Title I of the Foreign Service Act of 1980, shall be awarded in accordance with standards established under section 7701(g) of this title. . . .

5 U.S.C. § 5596(b)(1) (1988). The referenced provision of 5 U.S.C. § 7701(g) states that:

... the Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice ...

5 U.S.C. § 7701(g)(1) (1988). We have held the "interest of justice" standard generally applicable to fee claims under the Back Pay Act. *Sims v. Department of Army*, 711 F.2d 1578, 1578 (Fed.Cir.1983); *Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1576 (Fed.Cir.1986) (in banc). Various factors may be considered in determining whether an award is "warranted in the interest of justice," including agency bad faith, action which is clearly without merit or wholly unfounded, gross procedural error, and whether the agency knew or should have known *ab initio* that it would

not prevail on the merits. *Sims*, 711 F.2d at 1581.

Interior denied Knight's administrative request for fees under the Back Pay Act, concluding *inter alia* that an award of attorney fees is not warranted in the interest of justice.[13] In support of this conclusion, Interior cited its reasonable reliance upon "a common procedure sanctioned by OPM." The district court reviewed Interior's denial of fees under the deferential standard afforded administrative actions, finding that it was not an abuse of discretion, contrary to law, or unsupported by substantial evidence.

Although the parties contest the degree of deference that must be afforded Interior in this matter, we decline to address this question. Even were we to determine *de novo* whether a fee award would be "in the interest of justice," we would agree with Interior and the district court. Interior merely followed established policy; the question of statutory interpretation was not at all clear; and it acted promptly when this policy was challenged.[14] The district court's denial of fees on this claim is affirmed.

### B. Equal Access to Justice Act

■ Finally, Knight asserts error in the denial of attorney fees and costs under the Equal Access to Justice Act for work before the district court on the suit for attorney fees. The part of the EAJA relevant here, codified at 28 U.S.C. § 2412 (1988), provides for an award of fees incurred by a "prevailing party" in a civil action brought against the United States.[15]

Foster Pepper argues principally that the government acted in bad faith and that this suit would have been unnecessary if the

---

13. OPM's regulations require that a fee request under the Back Pay Act be presented to "the appropriate authority that corrected or directed the correction of the unjustified or unwarranted personnel action." 5 C.F.R. § 550.807 (1992).

14. The suggestion that Interior acted wrongly in disbursing back pay in contravention of Foster Pepper's lien is irrelevant to this claim. This claim of Knight is for additional fees, not lien enforcement. We also note that Knight has not suggested that *OPM* was responsible for any

"unjustified or unwarranted personnel action." Nor does he contend that the "interest of justice" requirement may be met by OPM's behavior in this matter.

15. 28 U.S.C. § 2412(d)(1)(A) (1988) provides that such fees are to be awarded "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

United States had withheld the fees it demanded. This argument borders on the frivolous. Only Knight can assert an EAJA claim, not his attorneys. *FDL Technologies*, 967 F.2d at 1581.

Here, Knight has "incurred" no attorney fees for the district court litigation. Foster Pepper was retained on a contingent fee basis, the amount of which accrued and was fixed before the suit. Although the "administrative attorney fees" sought as the object of the district court litigation are included within the "Claim" subject to Foster Pepper's 25 percent charge, our disposition of the case leaves no basis upon which such fees may be awarded. Thus the fees "incurred" by Knight in connection with the district court litigation are twenty-five percent of nothing—in other words, nothing. *See Phillips v. General Serv. Admin.*, 924 F.2d 1577, 1583 (Fed.Cir.1991) ("In this sense, Phillips incurs the attorney fees that may be awarded her. On the other hand, if no fee award is made to her, she does not have any obligation to pay any further fees to her attorney from her own resources.").

Respecting costs, Knight may have some obligation to pay the costs for litigation on his fee claims. However, this suit was primarily directed to Foster Pepper's own claims, not Knight's personal claims for costs and attorney fees. Even with respect to Knight's claims, Foster Pepper's lien claims, for which they must assume costs, have been inextricably intertwined into the Back Pay and EAJA issues, that is, into Knight's claims. No argument is made based on parsing out costs attributable to Knight's claims. Indeed, plaintiffs failed to present a separate issue respecting Knight's recovery of his costs—at best a de minimis amount—and we decline to give separate consideration *sua sponte* to this aspect of Knight's EAJA claim.

The denial of attorney fees and costs under the EAJA is affirmed.

## V.

### *Conclusion*

For the foregoing reasons, we reverse the award of attorney fees against the United States under the Alaska attorney fee lien statute and affirm the denial of attorney fees to Knight under EAJA and the Back Pay Act, and to Foster Pepper under the common fund doctrine.

## VI.

### COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART.