NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ROBERT M. ATHEY, MICHAEL R. CLAYTON, THELMA R. CURRY, RICHARD S. DROSKE, RALPH L. FULLWOOD, PAUL D. ISING, CHARLES A. MILBRANDT, TROY E. PAGE,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2020-2291

_____

Appeal from the United States Court of Federal Claims in No. 1:99-cv-02051-DAT, Judge David A. Tapp.

_____

Decided:  September 21, 2021

_____

IRA MARK LECHNER, Ira M. Lechner, Esq., Washington, DC, argued for plaintiffs-appellants.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by REGINALD THOMAS BLADES, JR., JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.

———————————

Before REYNA, SCHALL, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Plaintiffs appeal the United States Court of Federal Claims' denial of their motion for attorney fees based on two provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(b) and (d).   Plaintiffs' first basis for fees under § 2412(b) rests on an erroneous application of the common law "common fund" doctrine.  We therefore affirm the trial court's denial of fees on this basis.  Regarding Plaintiffs' second basis for fees under § 2412(d), the trial court weighed the Government's conduct and found the Government's overall position to have been "substantially justified" and accordingly denied attorney fees as a result.  Our review of this issue on appeal is highly deferential.  Because we discern no abuse of discretion in the trial court's determination, we affirm on this basis as well.

BACKGROUND

This appeal originated from a class action lawsuit in the United States Court of Federal Claims filed in April 1999.    Compl., *Archuleta v. United States*, No. 99-205C, ECF No. 1 (Fed. Cl. Apr. 7, 1999).  The plaintiffs in *Archuleta* alleged that several federal agencies had underpaid the former-employee plaintiffs for their unused leave, which is typically paid as a lump sum at the end of their employment.  Among other complaints, the *Archuleta* plaintiffs alleged that the agencies had improperly failed to include Cost of Living Adjustments (COLAs) and locality pay increases in their payments.

Five months after the complaint was filed, the Office of Personnel Management finalized a regulation making clear that federal agencies should include COLAs and other applicable pay in the lump-sum payment.   5 C.F.R. § 550.1201–1207.  After this regulation was promulgated,

seventeen of the eighteen government agencies involved settled with the former-employee plaintiffs, agreeing to the COLAs and locality increases. The United States Department of Veterans Affairs (VA) was the lone holdout. The former VA employees who were plaintiffs in *Archuleta* were severed into a new case at the Court of Federal Claims, thus becoming the *Athey* plaintiffs ("Plaintiffs"). Am. Compl., *Athey v. United States*, No. 99-2051C, ECF No. 2 (Fed. Cl. June 21, 2006).

The *Athey* litigation then proceeded for several years. A few milestones are described below. In 2007, the Court of Federal Claims granted the Government's motion to dismiss from the case Plaintiffs' claims to night premium pay, weekend additional pay, and Sunday pay after October 1, 1997. *Athey v. United States* (*Athey I*), 78 Fed. Cl. 157, 161–64 (2007). The trial court also excluded all registered nurses from the class. *Id.* Several years later, in 2015, the trial court granted the Government's motion for summary judgment that Plaintiffs were not entitled to interest under the Back Pay Act, 5 U.S.C. § 5596. *Athey v. United States* (*Athey II*), 123 Fed. Cl. 42 (2015). Finally, in 2017, the parties reached a settlement in which the Government agreed to pay the lump-sum adjustments owed due to the COLAs and locality increases for the 3,231 former VA employees in Plaintiffs' class.

Plaintiffs then appealed the trial court's grant of the Government's motion to dismiss with respect to Plaintiffs' claims for evening and weekend pay as well as the court's granting of summary judgment that Plaintiffs were not entitled to interest under the Back Pay Act. We affirmed those determinations. *Athey v. United States* (*Athey III*), 908 F.3d 696 (Fed. Cir. 2018).

Thereafter, on January 13, 2020, Plaintiffs sought fees at the trial court pursuant to the Equal Access to Justice Act (EAJA), which allows for costs and attorney fees to be awarded in suits against the United States in certain

situations.    Plaintiffs specifically sought fees under 28 U.S.C. § 2412(b) and (d)(1)(A).  Sections 2412(b) and (d)(1)(A) state:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. *The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.*
>
> . . .
>
> (A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

Section  2412(b), (d)(1)(A) (emphases added).

Section 2412(b) was intended to subject the United States to the same common law or statutory exceptions to

the American Rule of attorney fees[1] that other private parties would be subject to, such as the exceptions of "bad faith," "common fund," and "common benefit." *See Gavette v. OPM*, 808 F.2d 1456, 1460 (Fed. Cir. 1986). Before the trial court, Plaintiffs argued they were entitled to fees under § 2412(b) based on the common law exceptions of "common fund" and "bad faith."[2] They also argued under § 2412(d)(1)(A) that they were entitled to fees because the position of the United States was not substantially justified.

The trial court denied Plaintiffs' motion for fees. *Athey v. United States* (*Athey IV*), 149 Fed. Cl. 497 (2020). With regard to § 2412(b), the trial court determined that the "common fund" exception to the American Rule allows a plaintiff's counsel to recover its fee from the common fund awarded to a plaintiffs class in certain circumstances, but it does not impose additional fees on a defendant. *Id.* at 508–09. Accordingly, the trial court denied Plaintiffs' attempts to extract an additional award from the Government in a way not permitted by the "common fund" doctrine. *Id.* The trial court also denied Plaintiffs' motion for fees under § 2412(d) because, in the trial court's judgment, the overall position of the United States was substantially justified. *Id.* at 510–13.

Plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review decisions of the Court of Federal Claims regarding attorney fees for an abuse of discretion. *Haggart v. Woodley*, 809 F.3d 1336, 1354 (Fed. Cir. 2016); *see also*

---

[1]    The American Rule is that each party is responsible for its own attorney fees.

[2]    Plaintiffs do not appeal the trial court's denial of fees on the "bad faith" basis.

*Chiu v. United States*, 948 F.2d 711, 713 (Fed. Cir. 1991). Errors of law in the determination of attorney fees, however, are reviewed de novo. *Haggart*, 809 F.3d at 1354.

I

We begin with Plaintiffs' request for attorney fees under EAJA § 2412(b). The trial court denied Plaintiffs' motion for fees because the common-law theory Plaintiffs invoked for applying § 2412(b)—the common fund exception to the American Rule—does not apply to impose "an additional award" against a defendant, but instead allows for fees and expenses to be recovered from the common fund. *Athey IV*, 149 Fed. Cl. at 508–09. We agree that the common fund doctrine does not apply here in the manner proposed by Plaintiffs, and therefore we affirm the trial court's denial of fees under § 2412(b).

According to the plain language of the statutory text, § 2412(b) is a fee-shifting statute that applies only in certain, specified conditions—namely, "under the common law or under the terms of any statute which specifically provides for such an award." This provision "simply reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties." *Gavette*, 808 F.2d at 1466 (emphasis omitted) (quoting H.R. Rep. No. 1418, 96th Cong., 2d Sess. 9, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4984, 4987); *see also M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181 (Fed. Cir. 1993) (citing S. Rep. No. 253, 96th Cong., 1st Sess. 4 (Star Print 1979)).

In applying for fees at the trial court, Plaintiffs themselves relied on the "common fund" common law exception to the American Rule as providing the basis for fees under § 2412(b). As described below, however, the common fund exception does not apply to impose fees on defendants, as the trial court correctly held.

We discussed the common fund doctrine at some length in *Knight v. United States*, 982 F.2d 1573 (Fed. Cir. 1993). In *Knight*, plaintiffs' attorneys made a claim for attorney fees against the defendant Government under a common fund theory. We rejected that claim, holding that plaintiffs' attorneys were improperly applying the common fund doctrine because that theory "does not impose additional liability on the losing defendant," and instead "is essentially a suit for contribution from third party beneficiaries for expenses actually incurred." *Id.* at 1579–80. The fundamental basis for the exception is unjust enrichment—that a party who benefits from a plaintiff's attorney's advocacy in recovering an award should also contribute to that attorney's fees. *Id.* at 1580; *see also Haggart*, 809 F.3d at 1352. Thus, we agree with the Court of Federal Claims' determination that the common fund exception does not apply in the manner asserted by Plaintiffs—namely to impose additional liability on the United States as a defendant. *Athey IV*, 149 Fed. Cl. at 509.

On appeal, Plaintiffs interpret § 2412(b) as a fee-shifting statute that operates independently of the common law and the "common fund" doctrine. *See, e.g.*, Appellants' Br. 22 (arguing the "operative mechanism created by [§ 2412(b)] is to 'shift' liability for payment of reasonable attorney fees and related expenses to 'the United States' rather than from the 'common fund'"), 24–27 (arguing that the trial court erroneously applied the "common fund doctrine" in lieu of the "fee shifting" statute of § 2412(b)). Plaintiffs propose that their interpretation is supported by the legislative history and precedent interpreting § 2412(b) and other fee-shifting statutes. We disagree with Plaintiffs' interpretation.

First, Plaintiffs' theory that § 2412(b) stands alone to supplant the common law cannot be squared with the statute's plain language, which requires a predicate basis for shifting fees in either "the common law or under the terms of any statute which specifically provides for such an

award."[3]  *See Gavette,* 808 F.2d at 1466; *M.A. Mortenson,* 996 F.2d at 1181.  Indeed, it was Plaintiffs themselves that predicated their § 2412(b) argument on the common fund common law exception to the American Rule.  J.A. 2580.  Thus, the trial court's consideration of the applicability of this common law theory was not erroneous.

Second, the legislative history does not support Plaintiffs' interpretation.  On appeal, Plaintiffs cite broad statements describing the purpose of the EAJA statutory scheme as removing a deterrent to initiating litigation against or defending litigation initiated by the Government by "providing in specified situations for an award of attorney fees and other costs."  Appellants' Br. 22–24; *see also id.* at 21 n.5.  In other words, EAJA was intended to alleviate a potential litigant's concern that they would be monetarily worse off even if they won an award or mounted a successful defense against the Government.  This general purpose, however, cannot overcome the plain language of the particular statute that Plaintiffs argue entitles them to fees—§ 2412(b)—which only applies in specified situations.  Here, that situation is where "any other party would be

---

[3]    To the extent that Plaintiffs are arguing the portion of § 2412(b) reciting a "statute which specifically provides for such an award" is actually referring to § 2412(b) *itself* as a fee-shifting statute, we reject this reading.  If § 2412(b) were applied in this self-referential manner, the Government would always be liable for fees under this section and the section would no longer be limited to "common law . . . or statute," rendering the second sentence of § 2412(b) meaningless.  *See Sharp v. United States,* 580 F.3d 1234, 1238 (Fed. Cir. 2009) (applying the statutory cannon that courts "'give effect, if possible, to every clause and word of a statute' and should avoid rendering any of the statutory text meaningless or as mere surplusage" (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001)).

liable under the common law." And because other defendants would not be liable for an additional award of fees under the "common fund" doctrine, neither is the Government here.

Finally, the precedent relied on by Plaintiffs does not support their interpretation of § 2412(b). Plaintiffs first rely on *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015), and *NantKwest, Inc. v. Iancu*, 898 F.3d 1177 (Fed. Cir. 2018), for the proposition that § 2412(b) is a fee shifting statute that trumps the American Rule. Appellants' Br. 21. Although this is generally true, fee shifting pursuant to § 2412(b) has clearly-specified common-law and statutory limits to when it trumps the American Rule. In contrast, the EAJA fee shifting provision mentioned in *Baker Botts* and *NantKwest*—§ 2412(d)—applies in a much broader range of circumstances.[4]

Plaintiffs also rely on *Haggart v. Woodley*, 809 F.3d 1336 (Fed. Cir. 2016), but *Haggart* does not support Plaintiffs' interpretation. In *Haggart*, we found that a separate fee-shifting statute—the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA), which provides for "reasonable" attorney fees—preempted an additional recovery under a common fund theory. 809 F.3d at 1354–59. In other words, plaintiffs' counsel was seeking, and was granted by the trial court, not only "reasonable" attorney fees under the URA, but also additional fees under a "common fund" theory. Based on the particular fee-shifting statute at issue in *Haggart*, which was intended to make plaintiffs whole by shifting litigation expenses to the Government, we declined plaintiffs' counsel's request for additional fees under a common fund theory as it would have "unjustly enriche[d] class counsel at the expense of class members, a result diametric to the

---

[4]    As discussed below, however, even § 2412(d) has limits on when fee shifting applies.

primary purpose of the common fund doctrine." *Id.* at 1357. Here, Plaintiffs point to no fee-shifting statute that operates independently from the common law that would apply, as the URA did in *Haggart*, but instead point to § 2412(b), which expressly requires a predicate common law or statutory basis to award fees.

Because Plaintiffs misapply the predicate common-law exception upon which Plaintiffs based their § 2412(b) fees motion, we affirm the trial court's denial of fees on this basis.

## II

We turn next to Plaintiffs' request for fees under § 2412(d)(1)(A). The trial court denied Plaintiffs' motion after determining the Government's position to have been "substantially justified." *Athey IV*, 149 Fed. Cl. at 510–13. On appeal, Plaintiffs ask us to reweigh the trial court's determination, discounting the issues Plaintiffs consider to have been "minor" or "peripheral" and focusing only on what Plaintiffs call the "singular 'position'" of the Government—i.e., the position regarding the issues on which Plaintiffs ultimately prevailed. Appellants' Br. 32–36. We decline Plaintiffs' request to reweigh the trial court's determination based on its view of the entire record, a determination that is reviewed with a significant amount of deference under the abuse of discretion standard.

When evaluating a claim under § 2412(d), "trial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu*, 948 F.2d at 715; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In making this judgment call, "the entirety of the conduct of the government is to be viewed, including the action or inaction by the agency prior to litigation." *Chiu*, 948 F.2d at 715; *see also* 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United States"). "When a party has prevailed in litigation against the

government, the government bears the burden of establishing that its position was substantially justified." *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995), *as modified,* 109 F.3d 746 (Fed. Cir. 1997).

Here, the trial court agreed with the Government that its overall position was substantially justified largely based on its "string of successes" in paring the case down. *Athey IV*, 149 Fed. Cl. at 513. In particular, the trial court pointed to the Government's success in defending against claims made by Plaintiffs to "night premium pay, weekend additional pay, and Sunday pay after October 1, 1997," back pay for "non-General Schedule employees" (i.e., nurses), as well as "pre-judgment interest under the Back Pay Act." *Id.* (citing *Athey I*, 78 Fed. Cl. 157 (granting motion to dismiss as to those issues)); *see also Athey III*, 908 F.3d 696 (affirming those issues). The Court of Federal Claims determined that this "drumbeat of favorable decisions for the United States on multiple key issues . . . strongly indicates the United States' position was 'justified to a degree that could satisfy a reasonable person.'" *Athey IV*, 149 Fed. Cl. at 513 (quoting *Pierce*, 487 U.S. at 569).[5] Considering the trial court's familiarity with the record before it and the high standard of review applicable here, we cannot say that the trial court abused its discretion in determining that the issues on which the Government won were "key issues"; nor can we say that it abused its discretion in concluding that these wins were sufficient to render the Government's overall position substantially justified such that fees under § 2412(d) are precluded.

On appeal, Plaintiffs ask us to second guess the trial court's weighing of the relative importance of the issues in determining whether the United States' position was

---

[5]    Plaintiffs do not contest the trial court's use of the "justified to a degree that could satisfy a reasonable person" standard.

"substantially justified." More specifically, Plaintiffs challenge the trial court's weighing of the COLA and locality increases (issues on which Plaintiffs prevailed), on the one hand, against the night premium pay, weekend pay, Sunday pay, and pre-judgment interest issues (issues on which the Government prevailed), on the other hand. The key piece of evidence Plaintiffs point to in making this argument is their expert's declaration, which estimated monetary values for the various issues and indicated that the two issues on which Plaintiffs prevailed were much more valuable than the issues on which the Government prevailed. The expert's speculation as to the potential monetary values of the issues, even if accurate, cannot substitute for the trial court's judgment in weighing those issues. This required weighing is a highly discretionary task reserved for the trial court, as we described in *Chiu*:

> This exercise . . . is quintessentially discretionary in nature. For instance, whether the government was substantially justified overall where in litigation it depended on the ground of lack of jurisdiction and a party prevails on a substantive aspect of the agency's action which gave rise to the litigation necessarily involves an apples to oranges comparison. It is for the trial court to weigh each position taken and conclude which way the scale tips, and as an appellate court we must be wary not to redistribute these weights among different positions unless a serious error in judgment has been made.

948 F.2d at 715 n.4.

Here, Plaintiffs identify no such "serious error in judgment" by the trial court and instead simply ask that we assign more weight to the particular issues on which they prevailed. We exercise our judicial restraint and decline this invitation.

The trial court also addressed what it discerned to be "the Class's primary complaints": "(1) the delay in

obtaining relief for class members and (2) the failure of the United States to correct the procedures which led to class members failing to receive compensation to which they were entitled." *Athey IV*, 149 Fed. Cl. at 512. On appeal, Plaintiffs do not challenge the trial court's determination on the first concern, calling the "court approved enlargements [of time] irrelevant," Appellants' Reply Br. 12, and thus we do not address it here.

Regarding the second concern, however, Plaintiffs' reply brief forcefully contests the Government's narrative regarding previous settlement offers. For context, in the Government's response to Plaintiffs' motion for fees at the trial court, the Government countered Plaintiffs' assertions that the United States failed to correct the underpaid back pay by highlighting a previous offer to settle by the Government. This offer was refused by Plaintiffs' counsel. Plaintiffs did not respond to this contention in their reply at the trial court, and the trial court, accordingly, relied on this contention. *Athey IV*, 149 Fed. Cl. at 512–13. Plaintiffs' opening brief on appeal once again raised no issue concerning this contention by the Government or the trial court's reliance thereon. It was only after the Government again relied on this settlement offer in its response brief that Plaintiffs addressed this contention, calling it a "false narrative" because, according to Plaintiffs, the offer related only to a small fraction of the plaintiffs' class. Appellants' Reply Br. 12–15.

Plaintiffs, however, failed to raise this argument at a time when the Government could have responded, either at this court or at the trial court. And in any case, this issue only relates to the COLAs and locality pay issues on which Plaintiffs were successful, but it in no way diminishes the trial court's view of the importance of the "multiple key issues" that it relied on in finding the Government's position to have been "substantially justified." Therefore, even if we were to credit Plaintiffs' reply argument, Plaintiffs still fail to show the trial court abused its discretion.

CONCLUSION

The Court of Federal Claims properly denied Plaintiffs' motion for fees under EAJA § 2412(b) as improperly applying the legal theory on which they based their motion for fees (the "common fund" exception), and we find no abuse in discretion in the trial court's weighing of the Government's "overall position" under § 2412(d) and its conclusion that the Government was "substantially justified."

**AFFIRMED**