**Glenn H. SIMS, Petitioner,**

v.

**DEPARTMENT OF THE NAVY,**
**Respondent.**

No. 83–628.

United States Court of Appeals,
Federal Circuit.

July 15, 1983.

Blake Chambers, Washington, Ind., argued, for petitioner.

Robert G. Giertz, Washington, D.C., argued, for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director, Washington, D.C.

Before MARKEY, Chief Judge, and DAVIS and BALDWIN, Circuit Judges.

DAVIS, Circuit Judge.

Petitioner Glenn H. Sims asks review of the final order (September 28, 1982) of the Merit Systems Protection Board (MSPB or board) denying him attorney fees for litigation before the MSPB. We affirm.

I

Sims, a civilian employee of the Department of the Navy, was removed on August 31, 1979 from his position as an instrument mechanic at the Naval Weapons Support Center in Crane, Indiana.[1] On appeal to the MSPB, he admitted the substance of the charges but maintained that the penalty of removal was too harsh. The MSPB's presiding official sustained the agency removal action in an initial decision on November 20, 1979. On review by the board itself, the MSPB mitigated the removal to a 10-day suspension, finding that the presiding official's analysis was in conflict with its decision in *Douglas v. Veterans Administration,* 5 MSPB 313 (1981), because "the record here fails to demonstrate that the agency

---

1. Petitioner's removal was for (1) fraudulently using a government purchase document to obtain an electrical switch box for his private use, and (2) misuse of government time by absent-ing himself from his work area during attempts to return the box. Sims apparently intended to take the switch box off the base but ultimately returned it before doing so.

considered the consistency of the penalty it imposed on appellant with those imposed upon other employees for similar offenses", even though his "misconduct was premeditated and cannot be condoned."

Sims subsequently was denied an award of the attorney fees incurred in these actions, first by the presiding official and then by the board on review, on the basis that no entitlement to attorney fees was established under either the Back Pay Act, 5 U.S.C. § 5596(b), or the Civil Service Reform Act, 5 U.S.C. § 7701(g)(1). The board agreed with the presiding official that an award was not "warranted in the interest of justice" under the Civil Service Reform Act because "the agency's action was not 'clearly without merit,'" *see Allen v. U.S. Postal Service,* 2 MSPB 582 (1980), and that entitlement under the Back Pay Act was to be measured by the same "interest of justice" standard.

Petitioner claims the MSPB erred in denying him the fees because (1) an award of attorney fees is mandated by the Back Pay Act without reference to the "interest of justice" standard of section 7701(g) of the Civil Service Reform Act, (2) alternatively, the award is "warranted in the interest of justice", and (3) the amount of fees requested is reasonable. We deal in turn with the first two points; it is unnecessary to reach the third.

## II

■ Although a purely facial examination of the Back Pay Act suggests some support for petitioner's position on that piece of legislation, a more thorough look in light of the legislative history indicates otherwise. Provision for attorney fees was added to the relief previously available under the Back Pay Act by the Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 702, 92 Stat. 1111, 1216 (codified at 5 U.S.C. § 5596(b)(1)(A)(ii) (Supp. V 1981)). Section 5596(b)(1)(A)(ii) in pertinent part now states:

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee— (A) is entitled, on correction of the personnel action, for the period for which the personnel action was in effect—

\*   \*   \*   \*   \*   \*

(ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with Chapter 71 of this title, or under Chapter 11 of Title I of the Foreign Service Act of 1980, shall be awarded with standards established under Section 7701(g) of this title; and ...

Petitioner contends that this section establishes two different standards for the award of attorney fees in back pay cases in which an employee meets the criteria set out in subsection (b)(1). In those cases "which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with Chapter 71 of this title, or under Chapter 11 of Title I of the Foreign Service Act of 1980," reasonable attorney fees "shall be awarded" in accordance with 5 U.S.C. § 7701(g)(1) of the Civil Service Reform Act. Section 7701 regulates the MSPB's appellate procedures. Under § 7701(g)(1), the board "*may* require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party" when the board determines that "payment by the agency is *warranted in the interest of justice,* including any case in which a prohibitive personnel practice was engaged in by the agency or any case in which the

agency's action was clearly without merit." (Emphasis added.)

In all other Back Pay Act cases, Sims says, the provision requires that "the employee—is *entitled* . . .—[to] reasonable attorney fees. . . .", without any qualification. (Emphasis added.) Thus, he argues, because his case does not involve a "decision relating to an unfair labor practice. . . ." (or other specified type), he is entitled to the award of reasonable attorney fees without regard to the "interest of justice" standard.

We disagree with this reading of the statute. First of all, the statutory language is not unequivocal; the wording of § 5596(b)(1)(A)(ii), *supra*, does not clearly restrict the application of the "interest of justice" standard under § 7701(g)(1) to decisions relating to unfair labor practices, etc. The Pay Act's attorney fees provision does not state that fees are to be awarded according to that standard *only* "with respect to" any decision relating to unfair labor practices, etc. It simply says " . . . with respect to . . . ", which could be interpreted to mean "including, but not limited to . . . ".

Absent any other indication of the meaning of this ambiguous provision, petitioner's interpretation would not be unreasonable. But the legislative history demonstrates that Congress clearly intended awards of attorney fees under both provisions to be guided by the same "interest of justice" standard. The Conference Report on the Civil Service Reform Act discussed this issue as follows:

> The Senate bill authorizes attorneys' fees to be awarded in appeals cases by a hearing officer whenever the employee prevails and the officer determines that the agency's action was taken in bad faith or in cases where a discrimination under the Civil Rights Amendment of 1964 has occurred.
>
> The House amendment authorizes attorneys' fees in any case where the officer determines that payment "is warranted"

or in a case involving a discrimination under the Civil Rights Amendment of 1964.

> *The conference substitute (Sections 7701(g) and 5596(b)(1)(A)(ii)) authorizes attorneys' fees in cases where employee prevails on the merits and the deciding official determines that attorneys' fees are warranted in the interest of justice,* including a case involving a prohibitive personnel practice or where the agency's action was clearly without merit. The reference to these two types of cases is illustrative only and does not limit the official from awarding attorneys' fees in other kinds of cases.

H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 142 (1978), reprinted in 4 U.S.Cong. and Admin.News 2723, 2876 (1978) (emphasis added). (Note the express reference in the report to section 5596(b)(1)(A)(ii), the very Back Pay Act provision we are interpreting.)

Even if we were to agree with petitioner that there is no apparent ambiguity in the words of § 5596, it would be appropriate to review the legislative history, as we have done here, to be certain of Congress' intent. As noted in *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976):

> "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' " *United States v. American Trucking Ass'ns.*, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (footnotes omitted). *See Cass v. United States*, 417 U.S. 72, 77–79, 94 S.Ct. 2167, 2170–2171, 40 L.Ed.2d 668 (1974). See generally Murphy, Old Maxims Never Die: The "Plain Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts, 75 Col.L.Rev. 1299 (1975).

The District of Columbia Circuit likewise has recently given weight to this same Back Pay Act legislative history. In *Crowley v.*

*Schultz,* 704 F.2d 1269, 1274 (D.C.Cir.1983), that court held that the "Savings Clause" of the Civil Service Reform Act applies to that part of the Reform Act which grants attorney fees in Back Pay Act cases (*i.e.,* § 5596(b)(1)(A)(ii)) as well as cases falling under § 7701(g).[2] At issue was whether this provision required reversal of the district court's grant of Crowley's request for attorney fees in a Back Pay Act action that was commenced prior to passage of the Act. The district court had reasoned that the savings provision did not apply to Back Pay Act cases, and had awarded attorney fees on the theory—now espoused by petitioner Sims here—that § 5596(b)(1)(A)(ii) mandated such an award without qualification.

In reversing the district court, the Court of Appeals concluded that "[t]here is no reason to suppose that ... judicial relief under the Back Pay Act, should be treated any differently" from relief under § 7701(g). The court supported its holding with a discussion of the same legislative history which we have quoted above, noting that "[w]e find no reason to treat differently provisions which analytically fit together and which Congress considered together."[3] *Crowley,* 704 F.2d at 1274. *See also Wells v. Harris,* 2 MSPB 572, 574–575 (1980) (applying the legislative history to the board's interpretation of the two attorney fee provisions); 5 C.F.R. § 550.806 (1982) (regulation prescribed by the Office of Personnel Management, pursuant to 5 U.S.C. § 5596(c), which adopts the "interest of justice" standard for § 5596(b)(1)(A)(ii)).

## III

■ The remaining question is whether the board erred in denying petitioner an award of attorney fees under the "interest of justice" standard.[4] In *Allen v. United States Postal Service,* 2 MSPB 582 (1980), the board analyzed the legislative history of 5 U.S.C. § 7701(g)(1) and offered the following summary of illustrative, but not exhaustive, "circumstances considered to reflect 'the interest of justice' ":

1. Where the agency engaged in a "prohibited personnel practice" (§ 7701(g)(1));

2. Where the agency's action was "clearly without merit" (§ 7701(g)(1)), or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;

3. Where the agency initiated the action against the employee in "bad faith," including:

   a. Where the agency's action was brought to "harass" the employee;

   b. Where the agency's action was brought to "exert improper pressure on the employee to act in certain ways";

4. Where the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee;

5. Where the agency "knew or should have known that it would not prevail on the merits" when it brought the proceeding.

*Allen,* 2 MSPB at 593.

Petitioner urges that his case falls within those contemplated by this standard because his punishment was mitigated, and also because the record shows that the employing agency knew or should have known that it would not prevail on the merits. He seems to be arguing that because the pun-

---

**2.** The Savings Clause provides in part that "[n]o provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if. this Act had not been enacted."

**3.** Sims' reliance on the reasoning of the district court in *Crowley* is thus unavailing, the district court having been reversed.

**4.** There is no contention in this case that petitioner failed to "prevail" before the MSPB for the purpose of the attorney fees provision. *See Sterner v. Department of the Army,* 711 F.2d 1563 (Fed.Cir.1983).

ishment was mitigated from one which the agency knew or should have known would not be upheld, the agency should be responsible for his attorney fees in having prolonged the matter. We agree, however, with the presiding official and the board that petitioner's circumstances do not warrant an award of attorney fees.[5]

That the employee's punishment was mitigated from removal to a 10-day suspension does not, in itself, strike us as a circumstance which warrants—in the interest of justice—an award of attorney fees, particularly because he admits the wrongdoing which gave rise to the mitigated penalty. The agency's adverse action was not "clearly without merit," and it concerned indisputably improper conduct. There is insufficient evidence, moreover, that the agency knew or should have known it would not prevail. To say that the agency did not succeed in removing petitioner is not to say that it did not "prevail on the merits". There was never any question regarding the merits of the agency's case, the substance of which petitioner has admitted. If there were indications of bad faith or ill will by the agency in attempting to remove petitioner our conclusion might differ, but the mitigation in penalty occurred because

of something the agency could not have known at the time of petitioner's hearing. In reducing the sanction, the board applied a standard derived from its April 10, 1981 decision in *Douglas v. Veterans Administration,* 5 MSPB 313, which requires that the agency demonstrate consistency in the imposition of penalties on employees charged with similar offenses. We cannot say that the agency knew or should have known in 1979, when the adverse action was initiated, the substance of a 1981 MSPB decision or that it would be applied retroactively to petitioner's case.[6]

That the agency knew or should have known it would not prevail is evidenced— petitioner claims—by the agency's having "piled on" charges in order to gain his removal. This is said to have occurred in the agency's argument before the presiding official, who stated in his initial decision that

> the agency argued that the fact the appellant had not removed the item from the station did not excuse his actions, which, in view of the element of fraud, were tantamount to criminal or dishonest conduct. Referencing the table of penalties, the agency advised that criminal or dishonest conduct, first offense or otherwise, was a proper basis for removal.

**5.** According to the presiding official:

> In this case, there was no finding of a prohibitive personnel practice. Moreover, the agency's action was not "clearly without merit" since both of its charges were sustained and appellant was given a relatively severe first disciplinary penalty of a 10-day suspension. This disciplinary penalty was imposed after the Board specifically noted the "premeditated" nature of appellant's action. Appellant was clearly not, therefore, "substantially innocent" of the charges against him. In addition, there is no evidence the agency brought its action against the appellant in bad faith, that it intentionally prolonged the proceedings, or that it brought the case in an attempt to harass appellant.

**6.** Petitioner has asserted that the Naval Weapons Support Center's disciplinary guidelines, dated September 1, 1976, specifically require "like penalties for like offenses." Thus, he says, the agency knew from its own guidelines that it would not prevail in the removal proceedings, and it is therefore immaterial that

*Douglas* was issued after the presiding official's determination. This argument misconstrues the import of *Douglas.* The notion of "like penalties for like offenses" is general and ambiguous, and it was not until *Douglas* that detailed standards for fairness in determining penalties were established by the MSPB. Moreover, the mitigation in petitioner's punishment occurred not simply because *Douglas* required consistency in penalties for those similarly charged. *Douglas* also placed the burden on the agency of proving that the "selection of a penalty was based on consideration of the relevant factors." *Douglas,* 5 MSPB at 329. In Sims' case, the board, in mitigating the penalty, explained that there was no evidence of record that the agency had met its burden. For these reasons, we cannot say that the agency knew or should have known the substance of the *Douglas* decision, either with regard to its burden of proof or the specific factors to be considered.

Petitioner points out that he was charged, not with criminal or dishonest conduct, but with fraudulent use of a government document and misuse of government time.

We have difficulty with the position that this constitutes an incorrect "piling on" of charges. The statement that petitioner's actions were "tantamount to" criminal or dishonest conduct is not the same as saying he was technically "charged" with just such conduct. It is plain that, as the presiding official said, petitioner's conduct was "dishonest conduct"; he obtained the switchbox for his own use by fraudulently using a government purchase document.

Furthermore, petitioner's reliance on *O'Donnell v. Department of Interior*, 2 MSPB 604 (1980), as substantiation of his contention that such piling on constitutes agency knowledge that its case was without merit, is misplaced. In *O'Donnell* the board affirmed the presiding official's award of attorney fees because "[b]ased on the findings ... it is clear that if the agency had properly inquired into the facts presented by appellant's written reply to the charges, the agency would have—and certainly should have—ascertained at the outset that the central charge against appellant was without merit." That opinion also mentions that the agency piled on "stale and meritless related charges." But contrary to petitioner's argument, the award of attorney fees to O'Donnell firmly rested, not on any "piling on", but on the finding that the agency knew or should have known that "the central charge ... was without merit." This is in direct contrast to the current case, where petitioner has admitted the se-

rious charge against him. There is no evidence that the agency bore petitioner ill will, that it brought its action in bad faith to harass him or that it intentionally prolonged the proceedings. And as we have said, *supra,* there was no reasonable way in which the Navy could have foreseen the MSPB's *Douglas* standards and decision.

We do not at all say that Sims' attorney performed less than creditably or that he is not entitled to receive adequate compensation from petitioner. Counsel succeeded in reducing the sanction from total removal to a 10-day suspension; through his efforts Sims was entitled to reinstatement and presumably received about two years in back pay (or its equivalent). But the question here is, not whether the attorney should be paid for his success, but only whether the government is the one to bear that burden under the criterion Congress has established. All we hold is that the MSPB properly ruled that the government should not bear that burden here. *See also Sterner v. Department of the Army, supra,* 711 F.2d 1563 (Fed.Cir.1983).

*Affirmed.*