# United States Court of Appeals for the Federal Circuit

---

**MCKENZIE HOLMES,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2019-1973

---

Petition for review of the Merit Systems Protection Board in No. CH-0752-18-0233-I-1.

---

Decided: February 8, 2021

---

STEVEN H. JESSER, Steven H. Jesser, Attorney at Law, P.C., Glenview, IL, for petitioner.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, DYK, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge.*

McKenzie Holmes appeals the final decision of the Merit System Protection Board ("Board") affirming his removal from employment with the United States Postal Service ("USPS" or "agency"). We affirm.

## BACKGROUND

Mr. Holmes began working for the USPS in 1989. At the time of his removal, he worked as a city carrier at the Fort Dearborn Station in Chicago, Illinois. His removal was the result of a USPS Office of Inspector General ("OIG") investigation that revealed that another letter carrier, Christopher Baxter, was selling marijuana from Mr. Baxter's postal truck. Surveillance video of Mr. Baxter's assigned USPS vehicle showed Mr. Holmes and several other USPS employees engaged in alleged narcotics transactions with Mr. Baxter while on duty. Mr. Baxter later admitted to selling marijuana from his USPS vehicle. Additionally, six other letter carriers who were observed in the surveillance video admitted to purchasing marijuana from Mr. Baxter. Mr. Holmes denied purchasing marijuana from Mr. Baxter while on duty.

The surveillance video of Mr. Baxter's USPS vehicle showed two relevant interactions between Mr. Baxter and Mr. Holmes. The first was filmed on June 6, 2017, while Mr. Holmes was on duty and in uniform. The video showed Mr. Baxter placing an item in the cup holder of his USPS vehicle at 4:06 p.m. At 4:25 p.m., Mr. Holmes entered the vehicle. He took what appeared to be money from his pocket and handed it to Mr. Baxter, who pointed to the cup holder in which he previously placed the unknown item. Mr. Holmes removed the item, which appeared to be in a small plastic bag, and left the vehicle. After Mr. Holmes's

departure, Mr. Baxter counted what appeared to be a sum of money.

The second interaction occurred on June 9, 2017, again while Mr. Holmes was on duty and in uniform. The surveillance video showed Mr. Holmes and Mr. Baxter inside Mr. Baxter's postal vehicle, smoking what appeared to be a rolled cigar while Mr. Baxter was driving. Mr. Holmes exited the vehicle, leaving behind his priority mail parcels, scanner, and other work-related paraphernalia.

OIG issued a report of its investigation, which summarized Mr. Baxter's interactions with several USPS employees, including Mr. Holmes. Subsequently, in October 2017, USPS performed two pre-disciplinary interviews of Mr. Holmes. At both interviews, Mr. Holmes invoked his Fifth Amendment right to remain silent and declined to answer any questions concerning the surveillance video or the OIG report.

In December 2017, Customer Services Manager David Clark issued a Notice of Proposed Removal for Mr. Holmes. The notice charged Mr. Holmes with "Unacceptable Conduct/Purchase and/or Possession of an Illegal Drug While on the Clock and in Uniform." SAppx 24.[1] Following receipt of the notice of proposed removal, Mr. Holmes met with the deciding official, Tangela Bush. During the meeting with Ms. Bush, Mr. Holmes stated that he was "so embarrassed" and "really wanted to apologize to you. I wanted to apologize to Mr. Clark." SAppx 131. Finally, he stated that he "made this little mistake." *Id.*

In February 2018, Ms. Bush issued a final decision sustaining the unacceptable conduct charge and removing Mr. Holmes from federal service. Ms. Bush explained that the evidence, including the surveillance video of Mr. Baxter's

---

[1]    "SAppx" refers to the supplemental appendix filed contemporaneously with the respondent's brief.

postal vehicle, supported the charge.  She additionally noted that during her meeting with Mr. Holmes, he "did not dispute any of the facts outlined in the Notice [of Proposed Removal], and [he] admitted that [he] 'made this little mistake.'"  SAppx 134.  Finally, she concluded that the penalty of removal was appropriate.  In making this determination, Ms. Bush explained that Mr. Holmes's conduct caused her to lose confidence in his ability to continue working for the USPS, particularly because mail carriers operate without significant supervision.  She found that Mr. Holmes's conduct was "egregious" and bore a direct relation to his duties as a mail carrier because it occurred while he was on duty and in uniform.  *Id.*  She determined that "the egregious and illegal nature" of Mr. Holmes's conduct made her believe his "potential for rehabilitation is poor."  SAppx 135.  She additionally emphasized that the penalty of removal was consistent with the penalties received by all the other seven employees charged with purchasing marijuana from Mr. Baxter (the six shown in the video and one other).  Though Ms. Bush considered mitigating factors such as Mr. Holmes's "lengthy period of federal service," his "good work record," and his "lack of disciplinary record," she concluded that they did not outweigh the support for his removal.  *Id.*

Five of the seven other employees who had been removed for purchasing marijuana from Mr. Baxter appealed their terminations through grievance arbitration.[2]  In separate decisions that issued from December 2018 to March 2019, the arbitrators mitigated the penalty of removal to long-term suspension, and the employees were permitted to return to duty without back pay.

---

[2]    Seven other employees were discharged; all seven admitted to purchasing marijuana from Mr. Baxter.  Five of the seven sought review by an arbitrator.

Mr. Holmes instead decided to appeal to the Board, arguing that the agency had insufficient evidence to find that he purchased marijuana from Mr. Baxter. A hearing was held on July 10, 2018, and Mr. Holmes testified that he had never purchased marijuana from Mr. Baxter while on duty, although he admitted that he had previously purchased marijuana from Mr. Baxter while off the clock. However, Special Agent Ryan Petry testified that Mr. Holmes's conduct as shown in the surveillance video was consistent with a narcotics transaction and was substantially similar to the purchases made by other postal employees who admitted to purchasing marijuana from Mr. Baxter. Additionally, Ms. Bush testified that there was no legitimate work-related reason for Mr. Holmes to have gone into Mr. Baxter's postal vehicle.

In his April 16, 2019, initial decision, the administrative judge ("AJ") determined that the agency had shown by a preponderance of the evidence that Mr. Holmes had purchased marijuana while on duty. The AJ found that Mr. Holmes's testimony was not credible. In particular, the AJ emphasized the similarity between Mr. Holmes's interaction with Mr. Baxter and the admitted marijuana sales Mr. Baxter made to other USPS employees.

The AJ additionally found a nexus between the proven misconduct and Mr. Holmes's ability to perform his job responsibilities. The AJ credited Ms. Bush's testimony that Mr. Holmes's actions undermined his trustworthiness such that he could no longer be relied on to perform his duties, which require operation under minimal supervision.

Finally, the AJ addressed the appropriateness of Mr. Holmes's removal from service. He determined that Ms. Bush had properly considered all the relevant *Douglas* factors when deciding to remove Mr. Holmes. *See Douglas v. Veterans Admin.*, 5 MSPB 313, 332 (1981). Because Mr. Holmes's conduct was "serious and particularly troubling given the required trust placed in letter carriers," the AJ concluded that removal was appropriate. *Holmes v. U.S.*

*Postal Serv.*, CH-0752-18-0233-I-1 at \*13 (M.S.P.B. April 16, 2019) ("MSPB Op.").

The AJ's initial decision became the final decision of the Board on June 21, 2019. Mr. Holmes petitioned for review by this court.

## DISCUSSION

Mr. Holmes challenges the Board's decision on two grounds. First, he argues that the agency failed to prove by a preponderance of the evidence that he purchased marijuana while on duty and in uniform as a mail carrier with the USPS. Second, he asserts that his removal from service was inconsistent with the arbitrators' decisions to mitigate the penalties imposed on other USPS employees who purchased marijuana from Mr. Baxter.

Our review of Board decisions is limited by statute. We are permitted to set aside Board decisions only if we find that they are:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c).

## I

Mr. Holmes argues that the surveillance videos of his interactions with Mr. Baxter "w[ere] blurred and failed to clearly disclose any purchase of contraband." Pet'r's Br. 4. He additionally asserts that, because the agency never recovered or submitted into evidence the marijuana or money involved in the filmed transaction, there is "no proof of marijuana purchase." Pet'r's Br. 5. In support, he cites several cases concerning the evidence necessary to prove charges of criminal possession of a controlled substance.

Disciplinary removal proceedings before the Board, unlike criminal proceedings, do not require proof beyond a reasonable doubt.  Agencies are only required to prove by a preponderance of the evidence that the charged conduct occurred.  5 U.S.C. § 7701(c)(1)(B).  Therefore, the agency did not need to produce evidence sufficient for a criminal conviction, but only "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue."  5 C.F.R. § 1201.4(q).

Here, the Board thoroughly evaluated the record and determined that the agency had shown by a preponderance of the evidence that Mr. Holmes purchased marijuana from Mr. Baxter while on duty.  The Board noted that the surveillance video showed Mr. Baxter using a "similar modus operandi" in all his marijuana sales to postal employees and that Mr. Baxter's interactions with Mr. Holmes followed this same pattern.  MSPB Op. at *8.  The Board found it compelling that all the other employees in the video admitted to buying marijuana during the filmed transactions.  The Board further relied on the fact that Mr. Baxter admitted to selling marijuana and was apprehended with 293.5 grams of marijuana in his postal vehicle.

The Board acknowledged that Mr. Holmes denied purchasing marijuana from Mr. Baxter while on duty, but concluded that Mr. Holmes's explanation of the events in the surveillance video was not credible.  Instead, the Board credited the testimony of Special Agent Ryan Petry, who stated that Mr. Holmes's conduct in the surveillance video was both "consistent with a narcotics transaction" and "substantially similar to the six other postal employees captured in OIG surveillance videos, who admitted to purchasing marijuana from Baxter."  *Id*. at *7.  The Board found Special Agent Petry's testimony credible in light of Agent Petry's long career in law enforcement and training in narcotics investigations.   The Board additionally

credited the testimony of Ms. Bush, the deciding official and acting District Manager of the Central Illinois District for USPS, who stated that there was no legitimate work-related reason for Mr. Holmes to be in Mr. Baxter's vehicle.

The Board's decision was based in part on several credibility determinations, which are "virtually unreviewable" on appeal. *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). Such determinations "will not be disturbed unless inherently improbable, discredited by undisputed evidence, or contrary to physical facts." *Love v. U.S. Postal Serv.*, 162 Fed. App'x 994, 997 (Fed. Cir. 2006) (citing *Hanratty v. Dep't of Transp.*, 819 F.2d 286, 288 (Fed. Cir. 1987)). We have no reason to disturb these determinations here. Contrary to Mr. Holmes's argument, the Board can properly find that Mr. Holmes purchased marijuana while on duty even though there was no proof that marijuana was discovered on his person. In light of the significant evidence supporting the agency's charge, we perceive no reversible error in the Board's determination that the agency sufficiently proved that Mr. Holmes purchased marijuana while on duty.

## II

Mr. Holmes also asks this court to mitigate the agency's penalty and restore him to service because five other USPS employees who admitted to purchasing marijuana from Mr. Baxter were reinstated following grievance arbitration. Mr. Holmes's contention appears to be that the sixth *Douglas* factor, which asks whether the penalty is consistent with the penalty "imposed upon other employees for the same or similar offenses," requires that he receive the same penalty as these other employees. *Douglas*, 5 MSPB at 332.

The Board is required to determine "whether the agency has responsibly balanced the factors delineated in" *Douglas. Guirguess v. U.S. Postal Serv.*, 32 Fed. App'x 555, 559 (Fed. Cir. 2002). "The determination of which *Douglas*

factors apply in a particular case and the weight to be given the relevant factors lies primarily within the agency's broad discretion to determine the appropriate penalty for a particular case." *Zingg v. Dep't of the Treasury, IRS*, 388 F.3d 839, 844 (Fed. Cir. 2004).

Mr. Holmes's outcome does appear facially different than the outcome of the five employees who pursued arbitration, but this difference is not relevant to the Board's determination. Mr. Holmes did not make a disparate treatment argument before the Board, despite the fact that all five arbitration decisions occurred before the April 2019 initial decision in this case. Because Mr. Holmes could have, but did not, raise this issue before the Board, he is precluded from raising it here. *See Oshiver v. Office of Pers. Mgmt.*, 896 F.2d 540, 542 (Fed. Cir. 1990) ("Our precedent clearly establishes the impropriety of seeking a reversal of the board's decision on the basis of assertions never presented to the presiding official or to the board." (quoting *Rockwell v. Dep't of Transp.*, 789 F.2d 908, 913 (Fed. Cir. 1986))).

Even if the issue had been presented, the agency issued removals to all employees charged with purchasing marijuana from Mr. Baxter. At the time of the removal decision here, all the employees implicated in the OIG investigation were treated equally. That this penalty was later mitigated by arbitrators for five employees who pursued grievance arbitration does not reflect any disparate treatment by the agency itself.

The arbitration decisions were not binding on the Board. We have previously held that the Board is not required to defer to arbitration decisions in other cases. *See Horner v. Schuck*, 843 F.2d 1368, 1377–78 (Fed. Cir. 1988) ("To require the board to defer to arbitration decisions involving other employees or other union contracts would nullify the individual right of each respondent to appeal to the board."); *see also Hankins v. Dep't of Army*, DA-0752-13-0423-I-1, 2014 WL 5421566, at *1, *7 n.8 (M.S.P.B.

2014) (denying a petition for review of an AJ's initial decision affirming removal despite the fact that "the other employees' removals were mitigated during the grievance process" because "the outcome of proceedings in another forum has no bearing on whether the agency imposed disparate penalties"). These decisions make clear that the Board's decision need not be consistent with arbitration decisions in other cases.

In other contexts, too, a difference in outcome resulting from adjudication by separate tribunals does not warrant reversal. Indeed, it is a common feature of the criminal justice system that similarly situated persons before different fact finders may properly receive different outcomes. *See, e.g.*, *Getsy v. Mitchell*, 495 F.3d 295, 307 (6th Cir. 2007) (discussing different convictions received by co-conspirators tried before separate juries and noting that "the common-law rule of consistency has no application to conflicting verdicts returned by different juries in *separate trials*" (emphasis in original)); *Cortis v. Kenney*, 995 F.2d 838, 840 (8th Cir. 1993) (noting that several circuits have recognized that the rule of consistency "applies only where all coconspirators are tried jointly and does not apply where coconspirators are tried separately"); *see also In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439, 441 (7th Cir. 2004) (determining that separate juries could be used to try co-conspirators in a civil trial because while separate juries "may render different verdicts, which may be inconsistent," the inconsistency would be the permissible result of the juries hearing different evidence).

Further, even if the Board were required to consider the mitigated sentences of the other USPS employees, there was a rationale for treating Mr. Holmes differently. While the dissent contends that the evidence before the Board was identical to the evidence presented in the five arbitration proceedings, Dissent Op. at 6, this is not the case. The other employees all admitted to purchasing marijuana from Mr. Baxter. As Ms. Bush determined, Mr.

Holmes "failed to take responsibility for [his] actions during [his] interview with OIG" and characterized his conduct as a "little mistake." Removal Decision, SAppx 135. Thus, it would have been reasonable for the Board to uphold Mr. Holmes's removal as warranted by his unique failure to take responsibility for his actions. *See, e.g., Camaj v. Dep't of Homeland Sec.*, NY-0752-11-0048-I-1, 2012 WL 11893816 (M.S.P.B. 2012) ("On petition for review, the appellant asserts that there were four other employees who were treated differently with respect to the penalty imposed. However, the deciding official consistently explained that the appellant was different from these employees, particularly because the appellant failed to recognize the magnitude of his actions." (citation omitted)), *aff'd* 542 Fed. App'x 933 (Fed. Cir. 2013). Therefore, Ms. Bush properly evaluated the sixth *Douglas* factor in determining that the agency itself treated consistently all employees charged with purchasing marijuana from Mr. Baxter.

The dissent characterizes our conclusion as "sustain[ing] the harsher penalty on the ground that Mr. Holmes exercised his constitutional right not to confess to commission of a crime." Dissent Op. at 6. However, our determination that Mr. Holmes failed to take responsibility for his actions is not premised solely on his decision to exercise his Fifth Amendment Rights. Rather, as Ms. Bush explained, he also "denied certain facts that were proven false" and characterized his conduct as a "little mistake." SAppx 135. This behavior alone sufficiently establishes Mr. Holmes's unwillingness to take responsibility for his actions. Further, while an employee is permitted to invoke his or her Fifth Amendment right to remain silent, "an agency may still take into consideration and make an adverse inference from the failure of the employee to respond." *Brewer v. Dep't of Def.*, 249 Fed. App'x 174, 176 n.1 (Fed. Cir. 2007); *see also LaChance v. Erickson*, 522 U.S. 262, 267–68 (1998) (stating that an agency "may well . . .

take into consideration" its employee's invocation of his or her Fifth Amendment right).

Contrary to the dissent's assertions, Dissent Op. at 3–4, the Board also properly considered the other *Douglas* factors. Specifically, the Board expressly evaluated whether Ms. Bush appropriately weighed the relevant *Douglas* factors. First, the Board concluded that Ms. Bush considered the nature and severity of the allegations against Mr. Holmes and determined that the conduct was particularly egregious because mail carriers are expected to work with minimal supervision. The Board further found that Ms. Bush considered the potential for rehabilitation but determined rehabilitation was unlikely given the severity of the conduct and in light of Mr. Holmes's characterization of his actions as a "little mistake." MSPB Op. at *13. The Board also determined that Ms. Bush evaluated the mitigating factors, such as the duration of Mr. Holmes's employment with USPS, his lack of a disciplinary record, and his good job performance. However, the Board found that Ms. Bush "credibly testified that these factors could not outweigh the significant loss of trust placed in him as a letter carrier to follow USPS rules and regulations regarding performance of employees' duties in a drug-free environment." MSPB Op. at *13.

In addition, the Board independently considered the testimony of Gladys Jolla, a retired Customer Services Manager, who testified as a character witness for Mr. Holmes. SAppx 13. The Board noted that Ms. Jolla "admitted that she had no knowledge of or involvement with the OIG investigation that precipitated the events leading to appellant's removal." *Id.* Therefore, the Board concluded that Ms. Jolla's testimony "carrie[d] little weight and [did] not call into question the reasonableness of the penalty imposed by Ms. Bush" because she had "limited relevant knowledge of the facts relating to the appellant's removal." *Id.*

The Board concluded that the record demonstrated that the agency proved by a preponderance of the evidence that it properly weighed the *Douglas* factors in determining the appropriate penalty for Mr. Holmes. We see no reversible error in the Board's conclusions. Mr. Holmes has not shown that his removal "exceeds the range of permissible punishment specified by statute or regulation" or that it is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Archuleta v. Hopper*, 786 F.3d 1340, 1352 (Fed. Cir. 2015) (internal citation omitted). The Board therefore properly deferred to the agency's choice of penalty.

**AFFIRMED**

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**MCKENZIE HOLMES,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2019-1973

---

Petition for review of the Merit Systems Protection Board in No. CH-0752-18-0233-I-1.

---

NEWMAN, *Circuit Judge*, dissenting.

This appeal concerns the obligation of the Postal Service, as a federal employer, to assure that federal employees receive just and evenhanded consideration in adverse employment actions. Federal law entrusts that obligation to the employing agency, and entrusts review of agency compliance to the Merit Systems Protection Board ("MSPB") and the Federal Circuit. In the case of former Postal Service employee McKenzie Holmes, all three entities have failed their trust.

Statute and precedent require consistency of the penalty imposed on employees for comparable offenses. However, the court today holds that Mr. Holmes has no right to consideration of the penalty that was imposed on his fellow

marijuana-purchasers, who were restored to employment, while he remains fired—although all of the offenders committed the identical offense in identical circumstances and on identical evidence.

The majority holds that Mr. Holmes has no recourse. That is incorrect, for this court is charged to assure that federal agencies conform to statute and implement legislative policy in their employment practices. In *Wilburn v. Department of Transportation*, this court recognized that "the linchpin of federal personnel management is fairness, i.e., employees who are similarly situated are entitled to similar treatment." 757 F.2d 260, 262 (Fed. Cir. 1985).

This court is charged to assure that federal employment law is respected. The disparate treatment imposed on Mr. Holmes is contrary to law. From my colleagues' endorsement of this improper action, I respectfully dissent.

DISCUSSION

### *The issue of disparate treatment*

The Postal Service terminated all eight employees, including Mr. Holmes, who were video-recorded in transactions with Postal employee Christopher Baxter, in Baxter's Postal vehicle. The termination remedy is authorized by a Postal Service regulation concerning illegal drugs on Postal premises:

> 665.25 Illegal Drug Sale, Use, or Possession
>
> The Postal Service will not tolerate the sale, possession, or use of illegal drugs, or the abuse of legal drugs while on duty or on postal premises. Employees found to be engaged in these activities are subject to discipline, including removal and/or criminal prosecution where appropriate.

Postal Service Employee and Labor Relations Manual, Issue 42, 674 (Mar. 2017).

Five of the terminated employees sought grievance arbitration. The arbitrators held, in each case, that the penalty of removal was unduly harsh in the circumstances.[1] The arbitrators returned these five offenders to their Postal employment.

Mr. Holmes appealed to the MSPB. The MSPB held that termination was a permissible penalty under the Postal regulation, and deferred to the Postal Service's choice of remedy. The MSPB did not independently evaluate the penalty factors—known as the *Douglas* factors; it simply held that the Postal Service acted within its discretion. At the time of the MSPB trial, July 10, 2018, none of the grievance arbitrations had been decided. The record shows that the Administrative Judge ("AJ") inquired about the other employees:

> AJ. [The other employees have] all been served Notices of Removal from the Post Office, is that correct?

> Counsel. To my knowledge, yes. However, . . . those are [in the] administrative arbitration grievance process.

Hearing Tr., CH-0752-18-0233-I-1, 73–74 (July 10, 2018). The record before us does not show that the arbitration decisions were presented to the MSPB, by either Mr. Holmes or the Postal Service while the matter was *sub judice* in the MSPB, whose decision is dated April 16, 2019.

---

[1]    The five arbitration decisions are: USPS No. J16N-4J-D 18104838 (Feb. 22, 2019); USPS No. J16N-4J-D 18095367 (Mar. 18, 2019); USPS No. J11N-4J-D 18095418 (Feb. 10, 2019); USPS No. J16N-4J-D 18104860 20180228 (Jan. 20, 2019); and USPS No. J16N-4J-D 181095377 (Dec. 11, 2018) (S. Appx25–55).

It is of additional concern that the MSPB simply deferred to the agency's penalty, contrary to the requirements of precedent. *See Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993) ("The MSPB reviews *de novo* the merits of an agency's decision to take adverse action against an employee."); *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981) (requiring independent MSPB review of the agency's penalty, listing twelve non-exclusive factors).

### *All the Douglas factors must be considered in determination of penalty*

In *Douglas*, the MSPB identified twelve factors that must be considered in a federal adverse action; *viz.*:

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense or its impact upon the reputation of the agency;

(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10) potential for the employee's rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Id.* at 331–32.

Mr. Holmes cites several relevant *Douglas* factors, including his 28 years of Postal Service employment, his status as a disabled Marine Corps veteran, the absence of any past disciplinary record, his good job performance ratings, and his family life and community activities. A Postal Service supervisor testified that Mr. Holmes was "dependable and exhibited honesty and integrity." Holmes Br. 8 (MSPB testimony of Gladys Jolla, retired Customer Services Manager).

*Douglas* factor No. 6 requires comparable penalties for comparable offenses. "Ideal justice, and government personnel regulations, envisage equal treatment of persons similarly situated." *Schapansky v. Dep't of Transp., FAA*, 735 F.2d 477, 485 (Fed. Cir. 1984). Precedent teaches that disparity in penalty may suggest that "the penalty is so harsh and unconscionably disproportionate to the offense

that it amounts to an abuse of discretion." *Brook*, 999 F.2d at 528 (quotation marks and citation omitted). Yet this court now holds that disparate treatment is acceptable, because "inconsistency would be the permissible result of the juries hearing different evidence." Maj. Op. at 10. Here, however, the evidence was identical.[2]

The *Douglas* factors are founded in the principle of equal justice under law. "[O]ur system of law has always endeavored to prevent even the probability of unfairness," *Estes v. Texas*, 381 U.S. 532, 543 (1965). On this appeal, the Postal Service justifies the disparate penalty on the ground that Mr. Holmes did not confess, and by "exercis[ing] his Fifth Amendment Rights" he "failed to take responsibility for his actions." Maj. Op. at 11. My colleagues agree, and sustain the harsher penalty on the ground that Mr. Holmes exercised his constitutional right not to confess to commission of a crime.[3]

The majority states that "the Board's decision need not be consistent with arbitration decisions in other cases." Maj. Op. at 11. However, "*Douglas* . . . requires that the agency demonstrate consistency in the imposition of penalties on employees charged with similar offenses." *Sims v.*

---

[2]    The sole evidence against all eight malefactors was the video camera showing them in transaction in Baxter's Postal vehicle. The panel majority disputes that the evidence was identical, reasoning that the other culprits admitted to wrongdoing, while Mr. Holmes admitted only that he made a "little mistake." Maj. Op. at 11. Refusal to confess to a crime is not evidence. *See Griffin v. California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment . . . forbids . . . that such silence is evidence of guilt.").

[3]    The possession of marijuana was decriminalized in Illinois in 2020, after the events here. Holmes Br. 5.

*Dep't of Navy*, 711 F.2d 1578, 1582 (Fed. Cir. 1983).  Precedent does not permit ignoring disparate treatment.

That Mr. Holmes declined to confess is not justification for a harsher penalty.  The majority's reliance on *Brewer v. Department of Defense*, 249 F. App'x 174, 176 (Fed. Cir. 2007) and *LaChance v. Erickson*, 522 U.S. 262, 267–68 (1998) does not support the majority's view, for these cases hold only that an agency may consider an employee's refusal to testify in ascertaining the truth or falsity of the charge.  The cases do not hold that *Douglas* factor No. 6 does not apply when an employee refuses to admit to commission of a crime.

The MSPB was established for the purpose of assuring reliability, fairness, and consistency in federal employment actions, in the interests of both the government and those who serve it.  The Federal Circuit is charged with safeguarding this vast segment of federal employment law, in the interests of both the government and those who serve it.

Federal employment statutes require that: "All employees . . . should receive fair and equitable treatment."  5 U.S.C. § 2301(b)(2).  It is not "fair and equitable" to refuse to consider the factor of disparate treatment, for although this factor was not present at the time of the MSPB trial, it became manifest with the MSPB decision.  "*Douglas* required consistency in penalties for those similarly charged." *Sims*, 711 F.2d at 1582 n.6.

The obligation to assure compliance with merit principles and implementing law has been entrusted to the Federal Circuit.  From the court's abdication of that obligation, I respectfully dissent.