NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARY AGNES CRADDOCK,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2025-1867

---

Petition for review of the Merit Systems Protection Board in No. NY-1221-24-0221-W-1.

---

Decided: April 21, 2026

---

MARY AGNES CRADDOCK, Randolph, NJ, pro se.

COLLIN T. MATHIAS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before DYK, CHEN, and STARK, *Circuit Judges.*

PER CURIAM.

Ms. Mary Agnes Craddock, a pro se litigant, appeals from a Merit Systems Protection Board (Board) Decision dismissing her Individual Right of Action (IRA) appeal. *Craddock v. Dep't of Veterans Affs.*, No. NY-1221-24-0221-W-1, 2025 WL 994269 (M.S.P.B. Mar. 27, 2025) (*Decision*) (J.A. 4–20).[1]  After considering Ms. Craddock's arguments alleging retaliatory action by the Department of Veterans Affairs (VA) for certain whistleblower-protected disclosures, an administrative judge (AJ) found the VA demonstrated by clear and convincing evidence that it would have taken the same actions regardless of Ms. Craddock's protected activity.  *Id.* at 9.  The Initial Decision was not appealed and became the final decision of the Board on May 1, 2025.  *See* ECF No. 1.  Because the Board's findings are supported by substantial evidence, we *affirm*.

## BACKGROUND

From approximately February 2020 to May 3, 2023, Ms. Craddock worked as a Nurse Practitioner in the cardiac stress lab at East Orange, New Jersey VA Medical Center (VAMC).  In the cardiac stress lab, which was located within the VAMC's Nuclear Medicine unit, Ms. Craddock was responsible for administering cardiac stress tests to VA patients.  Part of her responsibilities included working with Nuclear Medicine Technologists (NMTs) who "were responsible for handling and injecting any radioactive materials needed for patients."  *Decision*, 2025 WL 994269, at 2.

On May 1, 2023, several NMTs sent a Memorandum to the VAMC's director alleging "ongoing harassment and

---

[1]    Because the online version of the Initial Decision lacks pagination, we use the pagination employed in the Board's original document.  "*Decision*, 2025 WL 994269, at 1," for example, corresponds to the first page of the decision, located at J.A. 4.

disruptive behavior" by Ms. Craddock. *Id.* The memo requested that Ms. Craddock "be removed . . . immediately" from the stress lab. *Id.*

The next day, May 2, 2023, the VA detailed Ms. Craddock out of the Nuclear Medicine unit to cardiology outpatient services pending an investigation. On May 3, 2023, Ms. Craddock filed complaints to the VA's inspector general (OIG) and office of whistleblower protection.

In response, the VA opened a formal investigation; between May 20, 2023 and June 5, 2023, the agency's administrative investigative board (AIB) interviewed Ms. Craddock and collected her evidence. The AIB issued a report on September 1, 2023 which substantiated claims in the NMT memo. *See* J.A. 185, 189.

After the AIB investigation was completed, Ms. Craddock filed a complaint with the Office of Special Counsel (OSC) alleging that the VA's actions, including detailing her to a new position, constituted retaliation against her for alleged Whistleblower Protection Act (WPA) disclosures. *Decision*, 2025 WL 994269, at 3 & 3 n.1. On June 20, 2024, the OSC informed Ms. Craddock it had terminated its inquiry, but she could still file an IRA appeal with the Board under 5 U.S.C. §§ 1214(a)(3) and 1221. *See* J.A. 126.

Thereafter, on August 21, 2024, Ms. Craddock initiated this IRA appeal. In response to multiple jurisdiction orders seeking to identify which issues were properly within the scope of her IRA appeal, Ms. Craddock raised more than 50 allegations of whistleblower disclosures and activities as well as alleged retaliatory personnel actions. *See generally* J.A. 25–43. On October 30, 2024, the AJ issued a jurisdictional finding and procedural order identifying a subset of Ms. Craddock's claims over which the Board could exercise jurisdiction. *Id.* at 40–41.

The AJ determined Ms. Craddock non-frivolously alleged she engaged in whistleblowing activity in (1) filing her May 3, 2023 OIG complaint "alleging unnecessary delays in scheduling or rescheduling patients of 30 days or more" and (2) filing her June 27, 2023 OSC complaint "alleging retaliatory action against her based on prior disclosures regarding unnecessary delays in scheduling [or] rescheduling patients." *Decision*, 2025 WL 994269, at 5; *see also* J.A. 36–38.

The AJ further determined that Ms. Craddock had also sufficiently pled her protected activity contributed to the VA's decisions to: extend her involuntary detail to cardiology outpatient services on September 6, 2023; remove her ergonomic desk topper and computer from her office after an extended sick leave; issue a proposed admonishment for her alleged conduct; withhold her clinical credentialing for the period between October 13, 2023 and December 18, 2023; and permanently transfer her to cardiac outpatient clinics on June 17, 2024. J.A. 40.

In the Initial Decision, the AJ analyzed the record in view of the *Carr* factors. *Decision*, 2025 WL 994269, at 5–9 (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). The AJ ultimately concluded that the VA's "exceptionally strong justification for its actions" demonstrated by clear and convincing evidence that it would have taken the same personnel action regardless of Ms. Craddock's disclosures. *Id.* at 9.

On May 1, 2025, the AJ's Initial Decision became final. Ms. Craddock timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is limited by statute. *Holmes v. United States Postal Serv.*, 987 F.3d 1042, 1046 (Fed. Cir. 2021). "We are permitted to set aside Board decisions only if we find that they are: (1) arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* (quoting 5 U.S.C. § 7703(c)).

On appeal, Ms. Craddock argues that the AJ improperly excluded from review certain disclosures and activities that, in her view, were protected under the WPA and certain VA actions that, also in her view, were retaliatory. Ms. Craddock also argues that the AJ erred in analyzing the *Carr* factors. We address each argument in turn.

## I.    Jurisdictional Findings

"To establish a prima facie case of retaliation for whistleblowing activity, an employee must show both that she engaged in whistleblowing activity by making a disclosure protected under 5 U.S.C. § 2302(b)(8) and that the protected disclosure was a contributing factor in a personnel action." *Briley v. Nat'l Archives & Recs. Admin.*, 236 F.3d 1373, 1378 (Fed. Cir. 2001).

### A.  Protected Disclosures and Activity

In the AJ's jurisdictional finding order, the AJ first narrowed down Ms. Craddock's allegations of whistleblowing disclosures and protected activity. J.A. 26–30. The AJ noted that certain allegations of VA wrongdoing by Ms. Craddock did not include assertions that Ms. Craddock herself made a protected disclosure or otherwise engaged in protected activity. *See id.* at 26. The AJ further determined that several of Ms. Craddock's other allegations did not describe "action reasonably characterized as whistleblowing," because Ms. Craddock failed to show she "reasonably believed" those disclosures "evidence[] (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Id.*; 5 U.S.C. § 2302(b)(8).

Ms. Craddock's dismissed allegations included, e.g., her November 2022 report that an NMT "slammed" a syringe box onto her desk, *see* J.A. 27 n.2, her February 2023 report that an NMT left a nuclear box unmonitored, *see id.* at 29 n.4f, her July 2023 report about errors in documenting community care imaging consultations, *see id.* at 33 n.10, and several others. For each allegation, the AJ thoroughly explained that the AJ could not find Ms. Craddock "reasonably believed" her complaints rose to the level of whistleblowing. *See id.* at 26–36.

Ms. Craddock argues that many of her allegations were erroneously dismissed because she identified radioactive waste management violations. *See* Appellant Br. 24–25. She also argues that her July 2023 disclosure identified public health and safety violations which should not have been dismissed. These arguments must fail.

On appeal, Ms. Craddock raises, for the first time, an argument that the subject of several of her disclosures concerned violations of certain health codes. *Id.* at 8–10 (citing 10 C.F.R. §§ 20.2001, 20.2006, and 20.2008). However, because Ms. Craddock did not present this argument to the Board, *see generally* J.A. 52–54, we find it waived. *Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court.").

Regarding Ms. Craddock's July 2023 disclosures of perceived documentation errors for community care imaging consultations, the AJ dismissed this allegation because the AJ found Ms. Craddock "could not have reasonably believed [her] email was whistleblowing when she sent it." J.A. 33. As the AJ noted, the WPA "is reserved for disclosures of significance." *Id.* at 27; *see also Herman v. Dep't of Just.*, 193 F.3d 1375, 1379 (Fed. Cir. 1999). Ms. Craddock's July 2023 email discussing minor procedural errors does not amount to a disclosure "of significance." Thus, this does

not disturb the AJ's findings, which are supported by substantial evidence.

## B. Agency Personnel Actions

In the AJ's jurisdictional finding order, the AJ dismissed several of Ms. Craddock's allegations regarding VA personnel actions. J.A. 38–40. The AJ explained that certain alleged reprisals did not qualify as personnel actions under the WPA. *Id.* at 38–39 (citing 5 U.S.C. § 2302(a)(2)(A)). The AJ also disqualified an allegation because the personnel action occurred on May 2, 2023, the day before Ms. Craddock's non-frivolously alleged protected activity. *Id.* at 39.

Ms. Craddock's arguments consist of assertions that certain allegations should not have been excluded. *See* Appellant Br. 28–30. First, she asserts that the AJ should have determined that the initiation of the VA investigation was a personnel action, because it was in response to Ms. Craddock's May 2023 OIG complaint. She also asserts that the AJ erred in excluding the removal of Ms. Craddock's ergonomic desk topper and computer from her office. These arguments are unpersuasive.

The AJ dismissed Ms. Craddock's allegations regarding the initiation of the AIB investigation because "[a]n agency investigation is not generally a personnel action." J.A. 38–39. The dismissed allegation concerned solely the opening of the AIB investigation, which under our precedent does not qualify as a personnel action. *See Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 955 (Fed. Cir. 2020) (determining that an allegedly retaliatory agency investigation "may qualify as a personnel action" only if it results in "a significant change in . . . working conditions") (internal quotation marks omitted).

Ms. Craddock contends that the AJ failed to address her argument regarding her allegation of reprisal when her ergonomic desk topper and computer were removed after

an extended absence. *Compare* J.A. 40 (list of personnel action allegations the Board had jurisdiction over), *with Decision*, 2025 WL 994269, at 5 (list of personnel actions analyzed using the *Carr* factors in which Ms. Craddock's ergonomic desk allegation is omitted). However, the AJ's failure to address this allegation is harmless error. *See Sistek*, 955 F.3d at 955–56 (finding it was harmless error for the Board to fail to address the plaintiff's allegation of retaliatory action by the agency because the allegation did not amount to a personnel action).

In a statement to the Board, Ms. Craddock claimed that, after returning from an extended sick leave, she discovered her ergonomic desk and computer "were removed from the room." J.A. 59. Ms. Craddock does not allege that the VA removed the desk and computer, but merely asserts that the items "were removed." She later admitted that the ergonomic desk topper was underneath a different desk in the same office. J.A. 219–20 [108:23–109:17]. Further, she testified that she was given a computer "within a couple hours" after notifying the agency's information technology staff of the missing items. *Id.* at 223 [112:8–13]. In sum, no evidence supports a finding that the AIB investigation amounted to a "personnel action" resulting in a "significant change" to Ms. Craddock's working conditions, rendering any error by the AJ in connection with this allegation harmless.

## II. *Carr* Analysis

If an employee "establishes a prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1364 (Fed. Cir. 2012) (quoting 5 U.S.C. § 1221(e)(1)). The Board evaluates the following three factors to determine if the agency has made this showing: (1) the strength of the agency's evidence in support of its

personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar action against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323.

In the Initial Decision, under *Carr* factor (1), the AJ reasonably found that the strength of VA's proffered evidence was sufficiently strong to support a conclusion that it would have taken the same personnel actions notwithstanding the protected activity. *Decision*, 2025 WL 994269, at 6–8. Relying on a sworn declaration from Ms. Kimberly Beckerman, a VA Human Resources specialist, the AJ noted that "when allegations of harassment are raised, the agency routinely separates the accused harasser from the party that lodged the complaint." *Id.* at 6. The AJ also highlighted evidence from the VA that Ms. Craddock's suspension was made permanent "because an investigation substantiated the complaints about her filed by five subordinates." *Id.* at 8. The AJ also noted that the VA presented evidence that Ms. Craddock's credentialing process was not impeded, and that it did not actually issue the proposed admonishment. *See id.* at 6–7, 6 n.3.

For *Carr* factor (2), the AJ determined that VA officials lacked motive to retaliate because those who were involved in detailing Ms. Craddock out of the cardiac stress lab were unaware of Ms. Craddock's protected activity at the time they made the decision. *See id.* at 8. Finally, the AJ did not assess *Carr* factor (3) because the VA did not present evidence of a comparator since Ms. Craddock was the only nurse in the cardiac stress lab. *See id.* at 9.

Before this Court, Ms. Craddock argues that the AJ's credibility analysis of Ms. Beckerman was in error because of a discrepancy in her testimony. Appellant Br. 26. Ms. Craddock highlights Ms. Beckerman's statement that the September 6, 2023 extension of Ms. Craddock's

involuntary detail was due to the ongoing AIB investigation, but the AIB report was published on September 1, 2023. Ms. Craddock also disputes the AJ's findings related to her credentialing process allegation. *Id.* at 29–30.

These arguments are insufficient. First, the AJ's credibility evaluation of Ms. Beckerman is "virtually unreviewable" on appeal. *King v. Dep't of Health & Hum. Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998). Second, VA policy allows 30 days after the publication of an investigative report for the authorities to review and certify the investigation as complete. *See* SAppx 52.[2] Thus, even though the investigative report was dated September 1, 2023, the investigation was still open at the time of Ms. Craddock's detailing extension. *See* J.A. 185. We therefore see no grounds for overturning the AJ's assessment of Ms. Beckerman's credibility.

Ms. Craddock's credentialing argument suffers a similar fate. In the Initial Decision, the AJ determined that, contrary to Ms. Craddock's allegations that the VA "withheld her clinical credentialing," *see* J.A. 40, there was no lapse in Ms. Craddock's credentialing from October 13, 2023 to December 18, 2023. *Decision*, 2025 WL 994269, at 7. The AJ relied on declarations from the VA stating Ms. Craddock's credentialing process during the relevant period "occurred as expected" and that there was no disturbance in Ms. Craddock's "current credentialing, nor her duties, responsibilities or work conditions." *Id.* Further, the AJ relied on testimony from Ms. Craddock that she does not know how the credentialing process works beyond replying to emails regarding submitting for re-credentialing. *Id.* We agree with the AJ's reasoning and determine

---

[2]    "SAppx" refers to the supplemental appendix filed with the government's brief.

that the AJ's findings are supported by substantial evidence.

## CONCLUSION

We have considered the remainder of Ms. Craddock's arguments and find them unavailing. For the foregoing reasons, we affirm.

### AFFIRMED

## COSTS

No costs.